GOTTFRIED ROBILLER, et al., Plaintiffs

v.

LOUIS TOTH, et al., Defendants

LOUIS TOTH, Plaintiff

v.

GOTTFRIED ROBILLER, Defendant

No. 102-1968

District Court of the Virgin Islands

Div. of St. Croix

March 19, 1969

JOHNSON & ZIMMERMAN, ESQS. (RUSSELL B. JOHNSON, ESQ., and ROBERT ZIMMERMAN, ESQ.), *for plaintiffs in No. 102-1968 and for defendant in No. 48-1969*

JAMES, HODGE & TONKIN, ESQS., (RONALD H. TONKIN, ESQ., and JAMES BARTON, ESQ. (Conn. Bar), of counsel), *for defendants in No. 102-1968 and for plaintiff in No. 48-1969*

MARIS, *Circuit Judge*

## OPINION

We have two cases before us which have been consolidated for trial together. In the first case, No. 102 of 1968, Gottfried Robiller and Edith Robiller as plaintiffs have

brought suit against Louis Toth and Anna Toth, Toro Incorporated, and Oroto, Incorporated, basically to return certain stock in Toro, Incorporated and Oroto, Incorporated. In the other case, No. 48 of 1969, which has been transferred from the Municipal Court, Louis Toth has brought suit against Gottfried Robiller upon a promissory note for $2,066, dated September 1, 1967. I shall proceed to discuss the basic facts as I find them and my conclusions with respect to both of these cases.

The plaintiff Gottfried Robiller is a builder in St. Croix and the defendant Louis Toth is an engineer and a manufacturer and officer of manufacturing companies in the states, and he resides in Connecticut. The other plaintiff, Edith Robiller, is the wife of Gottfried Robiller and Anna Toth is the wife of Louis Toth. These two individuals, back in 1966, that is the two men, Gottfried Robiller and Louis Toth, got together upon a project for the erection of a commercial office building in St. Croix. This was contemplated as a joint venture in which they would engage. It was their understanding that each of them, along with their wives, would put up an equal amount of capital for the venture. It was recognized, however, that the available liquid capital of the Robillers was much more limited than that of the Toths and that it might be necessary for the Toths to put up more money in the beginning but that ultimately this was to be equalized, if necessary, by the application to this purpose of the Robillers' share of profits in the enterprise.

To carry out this enterprise the corporation Toro, Incorporated, was incorporated under the laws of the Virgin Islands with each of the two plaintiffs and each of the two individual defendants holding one-quarter of the shares of stock. It was agreed that the capital to be paid in on the shares was to be $18,750 by each of the four individuals, or $37,500 by the Robillers and $37,500 by the Toths.

The Toths put up this amount of cash and very substantial additional sums, $62,500 at the time the capital was paid in, which was credited to them as a loan to the corporation, and additional sums over the subsequent period down to date, amounting to over $190,000 in cash.

The Robillers did not have, or professed not to have had liquid capital adequate to pay in this sum at the time the corporation was organized and Mrs. Toth, at their request, loaned to them the sum of $50,000 upon two promissory notes, the sum of $30,000 on August 16, 1966 and the sum of $20,000 additional on December 13, 1966. This money was ultimately paid in to Toro, Incorporated, $30,000 in October 1966 and $20,000 somewhat later. $37,500 of this was credited to them as their payment of capital upon the shares and $12,500 as a loan or advance to the corporation.

The corporation acquired a parcel of land in Estate Orange Grove, on the main road leading out of Christiansted, and it was on this parcel of land, consisting of 1.836 acres that the building contemplated by the project was ultimately built.

There is a basic dispute between the parties as to the status of Mr. Robiller with respect to the construction of this building. As I have said, he is a builder in St. Croix and does business under the name of Robicon Builders. The defendants contend that he was the general contractor and that he proposed to erect this building for a specific price. He, on the other hand, asserts that he was contributing his expert knowledge and supervision as supervisor of construction, as one who would procure necessary labor and materials, necessary subcontracts, and see to the proper construction of the building, himself expending for these purposes the sums necessary and expecting to be reimbursed by Toro, Incorporated, for his expenditures. In this connection he asserts that it was agreed that he would make no charge for his services, claim no profit or any

159

charge for overhead but merely his out-of-pocket expenses actually incurred in connection with the construction of the building.

I find from the evidence that this was the situation, that Mr. Robiller was not a general contractor but that he agreed to proceed with the construction of the building on the basis of reimbursement for his actual out-of-pocket expenses for labor and material and the payment to subcontractors without any profit to himself, any overhead or any salary.

In the course of this work he incurred large expenditures in proceeding with the construction and was reimbursed by Toro, Incorporated, in large amounts for these expenditures, the funds loaned to the corporation by the Toths being used for this purpose. The exact amount of the expenditures, or the obligations incurred by Mr. Robiller in the construction of the building is not in evidence and would have to be the subject of an accounting. However, it does appear that in the neighborhood of $70,000, more or less, was incurred by him over and above the reimbursement that he received from Toro, Incorporated.

Under the agreement of the parties, as I find it to be, each of these parties was to be credited by way of advances to the corporation for cash paid into the corporation or for cash paid for the account of the corporation, and accordingly any cash paid by Mr. Robiller for labor or materials, or subcontractors which went into this building for which he has not been reimbursed by Toro, Incorporated, would be a credit to which he would be entitled in determining whether the ultimate equalization contemplated by the parties of their investments in this corporation has been reached or whether it will be necessary for Mr. Robiller to put in more money or forego profits from the enterprise in order to equalize the investment.

In connection with the loans made by Mrs. Toth to the Robillers of $30,000 and $20,000, the Robillers gave as security two mortgages; the first upon eight plots of land which they owned, or one of them owned at Estate Sion Hill, and the second upon four additional plots of land at Estate Sion Hill which they owned. The notes which they gave became due and were not paid and negotiations ensued under which it was agreed that an extension of the time for the payment of these notes to July 12, 1967, would be allowed if the Robillers would put up as collateral security with Mrs. Toth their certificates for shares of stock in Toro, Inc., and in another corporation which the parties had organized, called Oroto, Inc., also a Virgin Islands corporation, which owned certain land formerly belonging to Mr. Robiller at Estate Mount Pleasant which he had conveyed to that corporation. I need not go into the details of that transaction because I don't think they are relevant to this lawsuit, except for the fact that the stock of that corporation, which was held, also, in four equal amounts, one by each of the four individual parties to this lawsuit, is involved because pursuant to this agreement the stock of Mr. and Mrs. Robiller in Toro, Inc., and in Oroto, Inc., was pledged with Mrs. Toth, who was their creditor, as further security for the loans which totaled $50,000.

July 12th came and went and the loans were not paid. On July 31, 1967, Louis Toth and Anna H. Toth wrote a letter to the Robillers calling attention to their failure to pay their obligations and stating that their failure to honor the notes left the Toths no other course but to inform them that they, the Toths, were taking over the Toro and Oroto shares owned by the Robillers. I find, however, that this letter was never delivered to the Robillers and therefore it need concern us no further.

Following the letter just mentioned, which is Plaintiffs' Exhibit 10, on August 30, 1967, counsel for Mr. and Mrs.

Toth, Mr. Ronald H. Tonkin, wrote a letter to the Robillers, Plaintiffs' Exhibit 1, calling attention to their failure to meet the notes at the time of their last extended due date, calling attention to the fact that the shares of stock in Toro and Oroto had been pledged as additional security and advising them that the endorsed stock certificates had been transferred, and I quote, "as directed by Mrs. Toth" and that neither of them was any longer a stockholder in either corporation, and that they had been removed as members of the board of directors and as officers.

There is reference in this letter to a principal balance of $12,500 that is past due, clearly confirming what the other evidence shows, that it was the intention of Mrs. Toth to apply this stock only in the sum of $37,500 to the indebtedness of the Robillers and to continue to hold them for the payment of $12,500 of the indebtedness. And the letter finally ended, "Unless this account is cleared up in full within one week from date we shall proceed with foreclosure proceedings against said properties, holding you fully liable for all additional costs."

The Robillers then went to Mr. James H. Isherwood as Counsel, who wrote under date of September 12th, thirteen days later, a letter to Mr. Tonkin, counsel for Mr. and Mrs. Toth, in which it is made quite clear that his clients do not accept or agree to the conduct or proposal or the action which is reported in the letter of Mr. Tonkin's.

The next event which is of importance here is a letter of May 24, 1968 from Mr. Russell B. Johnson, counsel for Mr. and Mrs. Robiller, to Mr. Tonkin—it is Plaintiff's Exhibit 7—in which he handed to Mr. Tonkin a certified check in the amount of $52,850 as full payment of the debt of Gottfried and Edith Robiller to Anna Toth. He also enclosed two forms of satisfaction of mortgage, requesting that they be executed and delivered so that the mortgages

which had been given as security for this indebtedness might be satisfied.

Subsequently, under date of June 1st and June 21st, 1968, there were letters from Mr. John F. James of James, Hodge and Tonkin, counsel for Mr. and Mrs. Toth, Plaintiffs' Exhibits 8 and 9, by the latter of which the certified check for $52,850 was returned to Mr. Johnson. Subsequently, upon application to this Court, the plaintiffs were authorized to deposit this amount of $52,850 in the registry of the court, where it lies today awaiting the disposition of this lawsuit.

In case No. 102 of 1968 the issue, as I conceive it to be, is a narrow one. It is whether the action which Mr. Tonkin reported under date of August 30, 1967, namely that Mrs. Toth had taken over the shares of stock in Toro and Oroto which Mr. and Mrs. Robiller had pledged with her, and had applied them in the sum of $37,500 to the indebtedness—wether that action was lawful, whether it actually resulted in the transfer of title to these shares. To determine this question we must turn to the Uniform Commercial Code which is in force in this jurisdiction, and which provides specifically for the manner in which collateral security of this type may be applied to the indebtedness of a defaulting debtor. There are two ways in which it may be applied, as I understand the law. By Section 9—504(3) of Title 11A of the Virgin Islands Code, which is a portion of the Uniform Commercial Code, disposition of collateral may be made by public or private proceedings unless the collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market. Reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made, shall be sent by the secured party to the debtor. The secured party may buy at any public

sale and if the collateral is of a type customarily sold in a recognized market, or is of a type which is subject of widely distributed standard price quotations, he may buy at private sale. Obviously the shares here involved are not that kind of a security, they are not widely sold in a recognized market nor is there a widely distributed standard price for the shares of either of these corporations. Therefore it is quite clear that Mrs. Toth was not legally entitled to buy this stock at her own private sale, although there is no suggestion that she did hold a private sale or that she made any kind of a sale.

■ There is another provision, and that is found in Section 9—505(2) of Title 11A of the Virgin Islands Code. This subsection provides that in a case involving collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor. If the debtor objects in writing within 30 days from the receipt of the notification the secured party must dispose of the collateral under Section 9—504, that is by sale, public or private.

■ Finally there is the provision of Section 9—506 of Title 11A of the Virgin Islands Code which is that at any time before the secured party has disposed of the collateral or entered into a contract for its disposition under Section 9—504, or before the obligation has been discharged under Section 9—505(2), the debtor, unless otherwise agreed in writing after default, may redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale and so forth. Here there is no evidence of any such expense.

■ I am, therefore, compelled to conclude that the defendant Mrs. Toth made no effort to realize on this collateral in either of the ways authorized by the statute, either by public or private sale or by giving notice that she was proposing to retain it in satisfaction of the debt. On the contrary, what she did was to say I am retaining it in satisfaction of part of the debt and holding you for the balance of the debt. This the statute does not permit.

That being so, in the action of Mrs. Toth, as communicated by Mr. Tonkin, is void and a nullity, it had no effect whatever in transferring title to these shares. They remained in law the property of the Robillers and since before Mrs. Toth made any disposition of them in the form which the statute permits, the Robillers made a tender for their redemption by offering a certified check for the full amount due, with interest, they are entitled to have the stock back. Of course Mrs. Toth is entitled to the money on deposit in this court, which is in full payment of the notes which the Robillers gave to her.

■ ■ It remains to consider the defense of estoppel which the defendants have raised in this case. This is an equitable defense in a case of this sort and its function is to prevent fraud and injustice. Accordingly, it is a settled principle that one who has wrongfully obtained the property of another may not set up estoppel to prevent the owner of the property from asserting title to it in a court of equity. It seems to me that this is the proposition here. As I have already pointed out, we are bound by the Virgin Islands Uniform Commercial Code, which is the law of this jurisdiction, under which the individual defendants had no legal right at all to take over the property, to wit, the stock of the plaintiffs' without following the procedures set out in the statute; which they did not do. The statute definitely gives to the owner of collateral, the debtor, 30 days in which to redeem it after the holder of the collat-

eral, the creditor, has given notice that he intends to take over the collateral in full payment of the debt. Now, of course, no such notice was ever given in this case but if it had been given, if the notice had been given, there would have been 30 days in which the Robillers would have had the absolute right to redeem their property. Accordingly, I am clear that the defense of estoppel is not available here to the individual defendants to protect their possession or their alleged ownership of the stock which they took unilaterally and without any legal right whatever. It still, as I have held, is the property of the plaintiffs and the plaintiffs are entitled in this court to assert their right to it and to claim repossession of it.

 Moreover, even if the doctrine of estoppel were available I see no loss to the defendants, which is a basic element of any estoppel, in that they acted to their detriment in reliance upon the statements or the silence of the plaintiffs. What is alleged is that the defendants proceeded to loan additional sums of money to Toro, Incorporated, upon the strength of their belief that they were the sole owners of the corporation, but I am not convinced that they would not have done the same thing if they had known that they were only half owners of the property. Here is a building in which they had invested large sums of money, a very substantial investment, a building in a developing neighborhood; true, not yet on a self-supporting basis but certainly in the line of becoming a self-supporting and possibly a very profitable investment in the not too distant future. I just can't believe that the defendants, having plowed in this much capital, would have abandoned this investment under those circumstances. I see no merit in the defense of estoppel and must therefore disallow it.

My determination in this case means, of course, that the parties are back where they were, that is, there are four stockholders here, each of them having a quarter interest

in the property. It means that Mr. Robiller is under an obligation to equalize his investment in this property with that of the Toths to the extent that he is able to do so, and certainly in any event to forego any possible income or profit from the enterprise until that equalization has taken place.

In order that a determination may be made as to just what this obligation is, it is quite obvious that there must be an accounting of all of the money that has been put into this property by all of the four parties, whether by way of actual loans of cash or by way of payments made upon the account and for the benefit of the corporation in the construction of the building or otherwise. The judgment of the Court in this case, accordingly, will include a declaration that the attempted transfer of the shares into the name of Mrs. Toth and possibly Mr. Toth, if it was transferred partly into his name, is null and void and that the transfer must be cancelled and the shares reissued to Mr. and Mrs. Robiller or their respective nominees or assignees, and that the parties shall state an account of their respective interests, their respective contributions. If they cannot agree upon this they may make application to the Court for further proceedings and the Court will appoint a special master to state an account, if necessary.

MR. TONKIN: Your Honor, on accounting, I am not quite sure who is to account to whom. Is each party supposed to account to the Court?

THE COURT: It seems to me you have got to agree in some form on a way to state this account. If you can't agree you will have to come back to the Court. This ought to be the subject of agreement between counsel. It is purely a matter of their getting at the figures and I see no reason why you can't do it. However, if you can't the Court will reserve jurisdiction for further proceedings.

The plaintiffs have stated frankly that they have not made any proof of actual damages and that is true, they have not, and I find no actual damages. And I am not disposed to award any punitive damages in this case. I think everybody has been to some degree at fault and negligent. This building didn't go forward as it was expected to, this may be in part the responsibility of Mr. Robiller. I am not prepared to make any finding on that, but I am prepared to say that the case does not call for the award of punitive damages.

I will award to the plaintiffs costs and an attorney's fee of $5,000, which will be on account of the fee agreed upon by counsel with his clients and a credit on that account.

Now we turn to No. 48 of 1969. I need only say here that the note sued on was given by the defendant Mr. Robiller to the plaintiff Mr. Toth for a loan which was made by Mr. Toth individually to Mr. Robiller in order that Mr. Robiller might pay an amount due and overdue by him or by Toro, or both, to David Lashley, a welder. Clearly Mr. Toth was not obligated to pay this amount and I don't need to find whether or not Toro, Incorporated, was so obligated because I am clear that Mr. Robiller was and it may be that both of them were. Just as was true in the steel case that we tried last year. And so in this case I must award judgment in favor of Mr. Toth against Mr. Robiller for the amount of the claim, with interest, it being clear, of course, that this will again be another contribution which Mr. Robiller will have made to Toro, Incorporated, for which he will be entitled to credit.

In this case, therefore, judgment will be entered in the amount of the claim, with interest and costs and an attorney's fee of $250.

That I think disposes of these cases.