Hajji A. R. AHMAD et al.

v.

Edward LEVI et al.

Civ. A. No. 75–2550.

United States District Court,
E. D. Pennsylvania.

June 10, 1976.

Hajji A. R. Ahmad, pro se.

Gregory M. Harvey, Roberta S. Staats, Philadelphia, Pa., for Vin Burke and CBS Inc.

David H. Marion, Samuel E. Klein, Philadelphia, Pa., for New York Times Co., Associated Press, Philadelphia Newspapers Inc.

Lewis H. Van Dusen, Jr., Timothy C. Russell, Philadelphia, Pa., for American Society of Newspaper Editors, American Newspaper Publishers Ass'n, National Newspaper Publishers Ass'n, Wall Street Journal.

John R. McConnell, Roberta S. Staats, Philadelphia, Pa., for American Bar Ass'n, Bulletin Co.

L. Gerald Rigby, Philadelphia, Pa., for United Press International, Inc.

Elihu A. Greenhouse, Philadelphia, Pa., for WPVI-Television.

Arthur E. Newbold, IV, Steven E. Feirson, Philadelphia, Pa., for KYW Radio & Television.

## MEMORANDUM OPINION AND ORDER

A. LEON HIGGINBOTHAM, Jr., District Judge.

### INTRODUCTION

The Court has already dealt with certain of plaintiffs' grievances, though not with this case, in an unreported Memorandum Order dated September 5, 1975. At that time, Hajji A. R. Ahmad, one of the instant plaintiffs, was plaintiff in two related civil actions, Nos. 75–1829 and 75–1851. Initially, both suits appeared to involve only a relatively uncomplicated claim of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* As the summer of 1975 wore on, however, Mr. Ahmad, acting as his own attorney in Civil Action No. 75–1829, assailed this Court with a barrage of petitions, motions, and requests for relief that far exceeded the scope of the original complaints. Since it appeared that Mr. Ahmad had, with the filing of Civil Action No. 75–1851, already secured the relief he sought in Civil Action No. 75–1829, I denied in my Order of September 5, 1975 virtually all of his other petitions, motions, and requests for relief. In response to those rulings, Mr. Ahmad filed the instant action,

where he again seeks much of the relief that he ultimately requested in Civil Action No. 75–1829. See Complaint, Doc. # 1, at ¶ 9.[1] He asks generally that this Court compel the United States Government to adhere to the Constitution and laws of the United States in the conduct of its foreign policy toward the State of Israel, that this Court redress alleged violations of his federal constitutional rights and of his federal and state statutory rights, that this Court compel the prosecution of those who have allegedly violated his rights, and that this Court compel the news media to cease suppressing information about alleged wrongdoing by the United States Government.

The case comes before the Court at the present time on motions to dismiss or strike filed by several of the named defendants.[2] The moving defendants argue that the complaint should be dismissed or stricken as to them on one or another of the following grounds: (1) plaintiffs lack standing to bring this action; (2) the complaint does not state a claim upon which relief can be granted; (3) the allegations of the complaint do not meet the standards of specificity required in civil rights actions; and (4) plaintiffs have failed to comply with the requirements of Fed.R.Civ.P. 11. After careful consideration of these motions, I have concluded that the moving defendants have raised clearly meritorious defenses that apply not only to them, but to all other named defendants as well. Accordingly, the motions to dismiss will be granted, and the entire action will be dismissed with prejudice.

## FACTUAL ALLEGATIONS

The sum total of plaintiffs' factual allegations about the non-governmental defendants appears in Paragraphs 8 and 9 of the original Complaint. In pertinent part, those paragraphs read as follows:

"8. Each of the defendants have received copy of evidence of wrong doing on behalf of members of the U.S. Gov't and have failed or refused to do what the law requires of him or her in their position.

. . . . .

9. . . .

The news-media discriminates against the plaintiff by concealing and refusing to publish new [sic] which;

(a) reveals unlawful activity on the part of the United States Government.

(b) benefits the plaintiff and the American public.

(c) shows unlawful activities on the part of U.S. Zionist.

(d) informs the public which laws are being violated by the United States foreign policy.

. . . . .

Plaintiffs is discriminated against by the defendants in all of its dealings with regards to the Middle East and by discriminating against Muslims in favor of Jews."

The original complaint, Doc. # 1, at ¶ 9, does incorporate two exhibits by reference. I have reviewed these exhibits with care and find that, when stripped of their rhetoric, neither materially increases the specificity of the complaint with respect to the moving defendants. The first alleges that World Zionism has captured the press in the United States and systematically suppresses news that is favorable to the Muslim or Arab cause. The second consists of a series of affidavits and pleadings in other actions.

---

1. For the purposes of these motions to dismiss, I shall treat both the Complaint (Doc. # 1) and the Amended Complaint (Doc. # 6) as a single document, hereinafter called "the Complaint." The Amended Complaint did not contain any new factual allegations nor did it materially change the number or identity of the defendants; it merely named an additional forty-odd parties plaintiff, including the heads of state of apparently every Moslem nation in the world.

2. The moving defendants are the American Bar Association; the Philadelphia Bulletin; the Associated Press; Philadelphia Newspapers, Inc.; the New York Times; United Press International; WPVI–TV; KYW Radio and Television; CBS Inc. and Vin Burke, who is the assignment editor of WCAU–TV; the American Society of Newspaper Editors; the American Newspaper Publishers Association; the National Newspaper Publishers Association; and the Wall Street Journal.

These documents generally allege that United States aid to Israel is illegal, that information showing the illegality of this aid has been furnished to various news media, including some of the moving defendants, and that the aforementioned news media have failed to publish this information.

Some of the documents appear to be part of a private criminal prosecution under federal mail fraud statutes. I make no judgment on the propriety of such a prosecution. It is clear, however, that these documents are not relevant to the motions to dismiss presently before the Court; the parties alleged to have made false representations to the plaintiff by mail do not include any of the moving defendants.

Because the documents that comprise plaintiffs' exhibits either do not mention the moving defendants at all, or do not state any specific conduct on the part of the individual moving defendants, or do not describe conduct on the part of the moving defendants that is not constitutionally protected, see *Miami Herald Publishing Co. v. Tornillo, infra,* I shall not refer to those exhibits again in this opinion.

### ISSUES BEFORE THE COURT

1. Procedural Issues

A. Defendants' Compliance with Notice Requirements

Plaintiffs attack the motions filed by some of the moving defendants on a number of procedural grounds, for example, the defendants' alleged failure to comply with the notice requirements of Local Rule 36 and Fed.R.Civ.P. 6(d), and their alleged failure to answer plaintiffs' complaint in timely fashion. Plaintiffs urge the Court to deny the relevant motions, to apply the sanctions of Fed.R.Civ.P. 8(d), and in some instances to enter a default against particular defendant. Plaintiffs' position does possess some superficial merit, for it is not clear whether all of the moving defendants

fully complied with the notice requirements of the Local and Federal Rules. It was, however, precisely to avoid plunging this case into a procedural morass over deadlines that may or may not have been met that I freely granted all of plaintiffs' motions for enlargement of time in which to respond to the papers filed by the moving defendants. See Docs. §§ 57–59, 61–63. I was concerned lest plaintiffs, who are proceeding *pro se,* be prejudiced by any real or alleged failure of defendants to comply with filing deadlines. I am confident that my rulings on plaintiffs' motions for enlargement of time have cured any prejudice that might have existed.

There is another consideration that undercuts plaintiffs' procedural arguments. The last motions to which plaintiff was obliged to respond were filed on December 1, 1975. Those motions were not scheduled for oral argument until January 23, 1976. Plaintiffs thus had at least seven full weeks to file supplemental memoranda if they so desired.[3]

Moreover, on October 29, 1975, plaintiffs filed a comprehensive memorandum in opposition to the motions of six defendants to dismiss or strike the complaint. Doc. # 42. This memorandum thoroughly sets forth plaintiffs' theory of their case and the principal arguments on which they rely in opposing the motions to dismiss or strike. While the memorandum by its terms applies to only six of the moving defendants, plaintiffs have incorporated it in subsequent papers relating to other defendants, and I have, in any event, treated it as though its arguments had been advanced in opposition to all of the motions to dismiss or strike. Since the arguments of the defendants overlap to a significant degree, the plaintiffs' October 29 memorandum covers most of them.

 Finally, in view of the clear and settled state of the law on the issues raised by the defendants, it would be grossly unfair to deny their motions or, in the ex-

---

**3.** Certain defendants did file motions on December 30, 1975. Docs. # # 65–68. They were, however, only duplicates of identical motions that the same defendants had already filed on December 1, 1975. Docs. # # 53–56.

treme case, to enter a default against any of them for a real or alleged failure to comply with filing deadlines. The law favors adjudications on the merits. It does not favor either defaults or preclusions, especially when the party against whom the default or preclusion is sought possesses a meritorious defense, and especially when the complexity and prolixity of a party's pleadings materially increase the difficulty of an adversary's efforts to respond to them. That is precisely the case here. Accordingly, I hold that the defendants are not barred from asserting their undoubtedly meritorious defenses because of any real or alleged failures to comply with filing deadlines.

### B. Plaintiffs' Compliance with Fed.R. Civ.P. 11

In his initial Complaint, Doc. # 1, Mr. Ahmad was the only named plaintiff, and described himself as "Plaintiff & Attorney in Fact." In his Amended Complaint, Doc. # 6, however, Mr. Ahmad, again describing himself as "Plaintiff & Attorney in Fact," listed an additional forty-odd parties plaintiff, none of whom have signed either the Amended Complaint or any other pleading in this action.[4]

Defendants allege that Mr. Ahmad does not purport to represent these additional plaintiffs as a licensed attorney and is not a member of the bar of this Court. These allegations stand unrebutted in the record. Defendants move the Court to strike the Complaint for failure to comply with the requirements of Fed.R.Civ.P. 11, since the Complaint does not establish that the additional plaintiffs have agreed that Mr. Ahmad should bring this action in their behalf.

In pertinent part, Fed.R.Civ.P. 11 requires that "[a] party who is not represented by an attorney shall sign his pleading and state his address." The purpose of this portion of the rule is obvious:

"Undoubtedly, one of the justifications for the quoted provision of Rule 11 is to make certain that the persons who are named as parties are actually in assent to the filing of an action on their behalf." *Huffman v. Nebraska Bureau of Vital Statistics*, 320 F.Supp. 154, 156 (D.Neb. 1970).

Rule 11 further provides that "[i]f a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served."

It is clear that, in the instant action, Mr. Ahmad has not complied with Rule 11. He is not an attorney, yet none of the additional parties plaintiff he listed in his Amended Complaint has signed any pleading in this case. These additional parties plaintiff include, among others, President Anwar El Sadat of Egypt, Yassir Arafat of the Palestinian Liberation Organization, King Khaled of Saudi Arabia, President Hafez Assad of Syria, King Hussein of Jordan, President Omar Khadafy of Libya, Colonel Houari Boumedienne of Algeria, and Prime Minister S. K. Mujibur Rahman of Bangladesh. Obviously, on the basis of the present record, I cannot determine whether any of these individuals have agreed that Mr. Ahmad may file suit in their behalf. Indeed, I would venture to guess that the overwhelming majority of them are not even aware of the existence of his lawsuit. Mr. Ahmad, even though he is proceeding *pro se*, can scarcely claim to be unaware of the requirements of Fed.R.Civ.P. 11. In my Order of September 5, 1975, I advised him in no uncertain terms that if he wished to add anyone as a party plaintiff in Civil Action No. 75–1851, he must have their written permission to do so. Because Mr. Ahmad had more than adequate notice of the requirements of Rule 11, it would not be unfair to hold him accountable for a flagrant violation of those requirements. Given the other meritorious defenses raised by the moving defendants, however, I need not, and do not, decide whether the Complaint should be stricken for failure to comply with Fed.R.Civ.P. 11.

**4.** It would appear that three of these additional parties plaintiff have signed pleadings filed by Mr. Ahmad in other actions. See the exhibits attached to the Complaint, Doc. # 1.

### 2. The Merits of the Motions to Dismiss

### A. Newspapers and Newsgathering Organizations

■ This category of defendants includes the Philadelphia *Bulletin*, Philadelphia Newspapers, Inc. (publishers of the Philadelphia *Inquirer* and the Philadelphia *Daily News*), the New York *Times*, the *Wall Street Journal*, the Associated Press, and United Press International. The core of plaintiffs' claim against these defendants is an alleged failure to publish certain information. Complaint, ¶ 9. Unfortunately for plaintiffs, this claim is not actionable. This Court cannot, consistent with the constitutional guarantee of a free press, order these defendants to publish certain information or assess damages against them for past failures to publish that information. As the Supreme Court said in *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258, 94 S.Ct. 2831, 2840, 41 L.Ed.2d 730 (1974):

> "A newspaper is more than a passive receptacle or conduit for news, comment, and advertising. The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time."

Plaintiffs' complaint against the moving defendants that are either newspapers or news-gathering organizations must therefore be dismissed for failure to state a claim upon which relief may be granted.

### B. Associations of Publishers and Editors

In this category of moving defendants are three organizations, the American Society of Newspaper Editors, the American Newspaper Publishers Association, and the National Newspaper Publishers Association.

To the extent that these organizations are sued because of their alleged editing and publishing activities, plaintiffs have of course failed to state a claim against them. *Miami Herald Publishing Co. v. Tornillo, supra.*

■ In addition, the complaint does not contain any specific allegation of any act or conduct by these defendants. Neither does it contain any specific statement of any injury or damage suffered by plaintiffs as a result of any acts or conduct by these three organizations. See Docs. # # 1 and 6. Complaints in civil rights cases must be specifically pleaded; they may not consist merely of conclusionary allegations that are not supported by facts. *Kauffman v. Moss*, 420 F.2d 1270, 1275 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); see *Fletcher v. Hook*, 446 F.2d 14 (3d Cir. 1971); *Negrich v. Hohn*, 379 F.2d 213, 215 (3d Cir. 1967); *Everett v. City of Chester*, 391 F.Supp. 26, 29 (E.D.Pa. 1975). Plaintiffs' complaint against these three defendants therefore must also be dismissed on the ground that it does not plead any specific acts or conduct by them.[5]

### C. The American Bar Association

The Complaint does not contain any specific allegation of any acts or conduct by this defendant. Neither does it contain any specific statement of any injury or damage suffered by plaintiffs as a result of any acts or conduct by this defendant. This total absence of specific allegations against this defendant fatally flaws plaintiffs' pleadings. *Kauffman v. Moss, supra*; see *Fletcher v. Hook, supra; Negrich v. Hohn, supra; Everett v. City of Chester, supra.* Plaintiffs' complaint against the American Bar Association must therefore also be dismissed.

### D. Radio Stations, Television Stations and Their Personnel

■ This category includes KYW Radio and Television, WPVI Television, Vin

---

5. This defense is equally applicable to defendant newspapers and news gathering organizations, supra.

Burke, who is the assignment editor of WCAU–TV, and CBS Inc., which is the owner and operator of WCAU–TV. These defendants are arguably within the scope of the holding in *Miami Herald Publishing Co. v. Tornillo, supra.* If they are, that fact alone would justify dismissal of the complaint as it relates to them. I need not, however, decide this question, because the complaint against them should be dismissed on at least two other grounds.

In the first place, the complaint is as vague and conclusory in its allegations about these defendants as it is in its allegations about the defendants I have discussed above. Because the complaint fails to allege specific facts about these defendants, it must be dismissed. *Kauffman v. Moss, supra.*

■ The second reason mandating dismissal of the claims against these defendants is the failure of plaintiffs to exhaust the administrative remedies available to them under federal law. Though plaintiffs do not allege jurisdiction under the Communications Act of 1934, 47 U.S.C. § 151ff., it is clear that their substantive claim against defendant broadcasters rests upon alleged violations of the "fairness doctrine," which has been developed by the Federal Communications Commission over the past several decades and approved by Congress in amendments to the 1934 Act. The doctrine requires broadcasters "to operate in the public interest and to afford reasonable opportunity for the discussion of conflicting views on issues of public importance." 47 U.S.C. § 315(a). See generally *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). In short, plaintiffs allege that defendant broadcasters have not told plaintiffs' side of the story. I need not, and do not, make any judgment on the merits of that claim. Congress has delegated the primary responsibility for enforcing the "fairness doctrine" to the Federal Communications Commission, not the district courts. See *Columbia*

*Broadcasting System, Inc. v. Democratic National Committee, supra; Red Lion Broadcasting Co. v. FCC, supra.* Indeed, the Commission is the exclusive primary forum in which alleged violations of the Act may be vindicated. *Post v. Payton*, 323 F.Supp. 799, 802 (E.D.N.Y.1971); *Ackerman v. Columbia Broadcasting System, Inc.*, 301 F.Supp. 628, 631 (S.D.N.Y.1969); *Gordon v. National Broadcasting Company*, 287 F.Supp. 452, 455 (S.D.N.Y.1968). The instant complaint contains no hint that plaintiffs have applied to the Commission for relief. Accordingly, it must be dismissed against defendant broadcasters for failure to exhaust the federal administrative remedies provided by Congress as part of a comprehensive statutory scheme to regulate the broadcasting industry in the public interest.

**E. The Issue of Standing**

■ A final issue raised by some of the moving defendants applies not only to them, but to all of the defendants in this action as well. As the Court construes the complaint, the relief it seeks is two-fold: (1) an injunction restraining the United States from furnishing foreign aid to the State of Israel; and (2) an injunction requiring the defendant news media to publicize the alleged illegality of United States foreign policy. In *Schlesinger v. Reservists Committee to Stop War*, 418 U.S. 208, 220–21, 94 S.Ct. 2925, 2932, 41 L.Ed.2d 706 (1974), the Supreme Court held that "standing to sue may not be predicated upon an interest . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share. Concrete injury, whether actual or threatened, is that indispensible element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution." In the instant case, the plaintiffs have not alleged, nor is it likely that they will ever be able to allege, that they have suffered the "concrete" or individual injury from either the federal government or the news media that *Schlesinger* requires. Accordingly, they lack standing to sue, and their action must be dismissed as against all defendants.

## CONCLUSION

Given the barrage of pleadings and allegations that the primary plaintiff has filed, it is evident that he does not lack zeal as to those issues about which he feels strongly. Nevertheless, it is clear that he has totally misconceived the role of the judiciary in our federal system. The relief he seeks would require this Court to assume direction of the foreign policy of the United States and to violate the First Amendment by abridging the constitutionally protected editorial discretion of the defendant news media. Some cases simply do not belong in federal court; this is one of them. Plaintiffs lack standing to bring this action; they have failed to state a claim upon which relief may be granted; they have not described with adequate specificity the conduct they complain of; and they have not exhausted their federal administrative remedies against the defendant broadcasters. For these reasons, their action must be, and is, dismissed with prejudice against all defendants.