**LIONEL E. CYNTJE, Plaintiff**

**v.**

**DAILY NEWS PUBLISHING COMPANY, AGIEL MELCHOIR, JR., DOUGLAS S. TAYLOR, RADIO STATION W.V.W.I., THOUSAND ISLAND CORPORATION, LEE CARLE, TELEVISION STATION W.B.N.B., CARIBBEAN BROADCASTING, INC. and RAY CARY, Defendants**

Civil No. 82-57

District Court of the Virgin Islands

Div. of St. Thomas and St. John

November 18, 1982

LIONEL E. CYNTJE, St. Thomas, V.I., *pro se*

JOHN G. SHORT, ESQ. (DUDLEY, DUDLEY & TOPPER), St. Thomas, V.I., *for defendants Daily News Publishing Co., Gannett Co., Inc., Melchoir and Taylor*

FREDERICK G. WATTS, ESQ. (LOUD, WATTS & MURNAN), St. Thomas, V.I., *for defendants W.V.W.I., Thousand Island Corp., and Carle*

BERNARD VAN SLUYTMAN, ESQ. (BIRCH, DEJONGH & FARRELLY), St. Thomas, V.I., *for defendants Caribbean Broadcasting, Inc. and Cary*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

Plaintiff Lionel E. Cyntje has brought this Court yet another in a series of interminable pro se grievances. In this instance he seeks injunctive and monetary relief under both the federal and territorial civil rights laws premised on the failure of certain news organizations to disseminate his views. For the reasons which follow, the motion of plaintiff for summary judgment will be denied and judgment will be granted in favor of each defendant.[1]

By his amended complaint, plaintiff alleges that three statements which he had prepared and delivered to defendants were never given adequate attention. One statement was contained in a proposed advertisement submitted (along with a fee) to the defendant Daily News Publishing Company under the caption of "Lt. Gov. Millin Commits Crime." Complaint, Exhibit E. By letter dated February 26, 1982, plaintiff was informed by the Advertising Director of the *Daily News*, defendant Douglas S. Taylor, that the proposed advertisement was not in accordance with the newspaper's standards and would not therefore be inserted for publication. The ad and fee were returned to the plaintiff. The second statement at issue is a self-styled news release written by plaintiff under the caption of "Chief Judge's Order Vacated" and dated October 27, 1981. Id. Exhibit A.

---

[1] Summary judgment "may be rendered in favor of the opposing party even though he had made no formal cross-motion under Rule 56." Wright and Miller, Federal Practice and Procedure: Civil § 2720 (1973).

This message was apparently delivered to the defendant *Daily News* and once again the newspaper failed to publish the statement or otherwise report the information contained therein. In addition, plaintiff challenges defendant W.B.N.B.-T.V. and its news director defendant Ray Cary, for their admitted failure to make use of the October 27 news release. See, Amended Complaint, Exhibits C and D. The third statement was another news release prepared by plaintiff to accompany (fittingly enough) the filing of this lawsuit. Entitled "Daily News of the Virgin Islands Has Been Sued," the statement was apparently hand delivered to defendant W.B.N.B.-T.V. as well as to defendant W.V.W.I. on March 8, 1982. Amended Complaint, Exhibits A and D. Both stations declined to make mention of it in their news reports.[2]

Although plaintiff's complaint is devoid of any specific allegation of injury purportedly suffered as a result of the acts of the defendants, a complaint filed by an unrepresented litigant must ordinarily be afforded much latitude. Zynn v. O'Donnell, 688 F.2d 940 (3rd Cir. 1982); Williams v. Bank of Nova Scotia, 17 V.I. 546 (D.V.I. 1980) ("the court must take special care to construe [pro se] pleadings so as to do 'substantial justice'"). Nevertheless, the present complaint fails to state any claim or for that matter any facts which could possibly afford its author any form of judicial relief.

With respect to the newspaper's refusal to publish the paid advertisement, plaintiff has no actionable legal claim. So long as such a refusal is not the result of racial discrimination or based on an otherwise invidiously discriminatory classification among those seeking to place advertisements, a publication cannot, under the guarantees of a free press found in both the First Amendment to the U.S. Constitution and the Revised Organic Act of the Virgin Islands, be compelled to print or to disseminate a paid advertisement. Homefinders of America v. Providence Journal Company, 621 F.2d 441, 444 (1st Cir. 1980) (newspaper not in violation of antitrust laws in refusing to publish deceptive rental ads submitted by plaintiff); America's Best Cinema Corporation v. Fort Wayne Newspapers, Inc., 347 F.Supp. 328, 335 (N.D. Ind. 1972) (policy of newspaper of refusing all ads from movie theatres which present adult films did not deprive theatre owners of any rights guaranteed by the Consti-

---

[2] While neither station acceded to plaintiff's demands, each responded to him by letter. Amended Complaint, Exhibits C and D.

tution). Nor can relief be afforded on the theory that the injury which allegedly results from a newspaper's refusal to publish a submitted advertisement amounts to a deprivation of rights "under color" of state law as defined by 42 U.S.C. § 1983, Chicago Joint Board, Amalgamated Clothing Workers of America v. Chicago Tribune Company, 435 F.2d 470, 478 (7th Cir. 1970). A privately owned newspaper is not of course an arm of the government nor does it operate under a government conferred license or privilege. In the case at bar, plaintiff has completely failed to allege how the advertising policy of the defendant *Daily News* impermissibly discriminated against him or otherwise caused him any cognizable legal harm.

■ ■ The principles set forth above apply with even greater force to the question of plaintiff's press release and his demand for access to the news columns of the *Daily News*. As the Supreme Court stated in Miami Herald Publishing Company v. Tornillo, 418 U.S. 241, 258 (1974):

> The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press. . . .

Thus, no court can order a news gathering organization "to publish certain information or assess damages against [it] for past failures to publish that information." Ahmad v. Levi, 414 F.Supp. 597, 602 (E.D. Pa. 1976) (Higginbotham, J.). Plaintiff may deem his press releases and his other messages to be of transcendent national importance but that still does not give him an enforceable right to see such information printed in the pages of someone else's publication. Accordingly, summary judgment will be granted for defendants *Daily News*, Melchoir and Taylor.

■ ■ To the extent that plaintiff asserts claims against broadcasters licensed by the Federal Communications Commission, the First Amendment shield he must pierce is not as impenetrable as that available to the newspaper defendant. As a licensee of the public airwaves a broadcaster must "conduct himself as a proxy or fiduciary," and therefore may, consistent with free press guarantees, be obliged "to present those views which are representative of his

313

community and which would otherwise, by necessity, be barred from the airwaves." Red Lion Broadcasting Company v. F.C.C., 395 U.S. 367, 389 (1969). That obligation is currently embodied in the so-called "fairness doctrine" of the Federal Communications Act which requires broadcasters "to afford reasonable opportunity for the discussion of conflicting views on issues of public importance." 47 U.S.C. § 315(a). While the doctrine does not require the broadcaster to present both sides to a controversy in every program it airs,[3] an overall failure to meet the ongoing duty of balance in the coverage of public issues may result in the revocation of the broadcaster's license or in other administrative sanctions. See, e.g., Office of Communication of United Church of Christ v. F.C.C., 425 F.2d 543 (D.C. Cir. 1969).

Notwithstanding the fairness requirements admittedly imposed upon the defendant-broadcasters in the present case, the primary responsibility for the enforcement of such rules and the determination of any infractions thereunder is vested in the Federal Communications Commission, not the courts. Michigan United Conservation Clubs v. CBS News, 485 F.Supp. 893, 903 (W.D. Mich. 1980); Central New York Right to Life Federation v. Radio Station W.I.B.X, 479 F.Supp. 8, 10 (N.D. N.Y. 1979); Ahmad v. Levi, supra, 414 F.Supp. at 603.

It has been consistently held moreover, that § 315 of the Federal Communications Act does not directly or impliedly create a private cause of action for those aggrieved by the actions of a broadcaster. See, e.g. Belluso v. Turner Communications Corp., 633 F.2d 393, 395–97 (5th Cir. 1980); Daly v. Columbia Broadcasting System, Inc., 309 F.2d 83, 85 (7th Cir. 1962); Gordon v. National Broadcasting Company, 287 F.Supp. 452, 455 (S.D. N.Y. 1968). Thus in the absence of evidence that a fairness doctrine complainant initially availed himself of the administrative procedures set forth in 47 C.F.R. § 1.41 (1981) ("Informal requests for Commission action") and thereafter exhausted such steps, the District Court lacks subject matter jurisdiction to adjudicate the matter. 47 U.S.C. §§ 401, 402. Without deciding whether the plaintiff herein has stated a colorable

---

[3] Thus the fairness doctrine does not for example authorize the remedy of compelled equal time which is available under the F.C.C.'s personal attack rule, 47 C.F.R. § 73.1920 (1981) and its political editorial rule, id., § 73.1930. As the gist of plaintiff's grievance is the failure of the broadcaster-defendants to mention him at all, neither of those two rules is implicated.

complaint under the terms of the Commission's regulations,[4] we find that his present lawsuit raises no genuine issues that entitle him to relief against any of the broadcast defendants. Accordingly, judgment is to be entered in favor of defendants Radio Station W.V.W.I., Thousand Island Corporation, Lee Carle, Caribbean Broadcasting, Inc., d/b/a W.V.N.B.–T.V. and Ray Cary.

For all of the foregoing reasons, judgment will be granted to each defendant.

---

[4] A party seeking to establish that a broadcaster has violated the fairness doctrine "must show that specific programs have dealt with controversial issues . . . , and if so, that other programs on the station have not balanced the coverage by presenting alternative viewpoints." Hale v. F.C.C., 425 F.2d 556, 558 (D.C. Cir. 1970). Furthermore, the administrative complaint must point to imbalance in the coverage of a controversial issue of public or general interest. "[T]he Fairness doctrine was not designed for the purpose of providing a forum for the discussion of mere private disputes of no consequence to the general public." Handling of Public Issues Under the Fairness Doctrine, 48 F.C.C.2nd 1, 39 Fed. Reg. 26, 372 (1974). Plaintiff will therefore be hard pressed to demonstrate as an initial matter how the information which he seeks to have aired concerns anything but a mere private dispute.