**ANN E. ABRAMSON, et al., Plaintiffs**

**v.**

**SMALL BUSINESS DEVELOPMENT AGENCY, Defendant**

Civil No. 81-125

District Court of the Virgin Islands

Div. of St. Croix

August 5, 1983

WARREN B. COLE, ESQ. (ISHERWOOD, HUNTER & COLIANNI), Christiansted, St. Croix, V.I., *for plaintiffs*

JESSE M. BETHEL, JR., ESQ., Houston, Texas, U.S.A., *for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

The issue presented in this declaratory judgment action is whether certain named guarantors of a promissory note may be held liable to the current holder of the note for a deficiency judgment under the terms of Article 9 of the Uniform Commercial Code, 11A V.I.C. Plaintiffs—each of the named guarantors—have moved for summary judgment. Fed. R. Civ. P. 56. For the reasons which follow, the motion will be denied and judgment will be entered for defendant.

### I.

The following facts have been stipulated to by the parties.

(1) On November 23, 1973, the People's Broadcasting Corporation executed a loan agreement with the Virgin Islands National Bank for the sum of $300,000.00 (Exhibit A). By the terms of the promissory note, the loan was secured by a first priority lien on certain real and personal property of the corporation (Exhibit F);

(2) In addition to the underlying note, personal guarantee agreements were executed between the Bank and each of the fourteen persons named as plaintiffs herein (Exhibit B);

(3) Another loan guarantee agreement was executed between the Bank and the Virgin Islands Small Business Development Agency (S.B.D.A.) (defendant herein) (Exhibit C);

(4) As of September 10, 1974, the borrower (People's) was in default of its obligations to the bank;

(5) By agreements dated May 3, 1977, the bank conditionally assigned all its rights under the note, the security therefor and the personal guarantees thereto to defendant S.B.D.A. (Exhibit I);

(6) By agreement dated August 19, 1977 (Exhibit L), the original borrower (People's Broadcasting Corporation) agreed to sell its personal and intangible property to Antilles Broadcasting Corporation;

(7) By paragraph III(3) of the agreement of purchase and sale, People's Broadcasting Corporation agreed to transfer certain personal property to the current holder of the note, the S.B.D.A. That provision reads in pertinent part as follows:

> . . . SELLER [People's] hereby transfers to the SMALL BUSINESS DEVELOPMENT AGENCY (SBDA), *in lieu of foreclosure of its first priority lien,* all equipment and furnishings presently owned by SELLER . . . and who, by signature hereon, accepts said equipment and further agrees to lease to BUYER said equipment at a monthly rental . . .

(emphasis added);

(8) The sale agreement of August 19, 1977, was expressly agreed to by S.B.D.A. through its director, Ulric F. Benjamin;

(9) On August 23, 1977, Antilles Broadcasting agreed to lease from the S.B.D.A. the equipment subject to the initial security agreement and described in paragraph III(3) of the purchase agreement of August 19, 1977 (Exhibit M);

(10) Pursuant to the terms of the lease agreement, the S.B.D.A. took possession of and then leased the equipment to Antilles Broadcasting Corporation in consideration for certain rental payments. Such payments were thereafter applied to reduce the indebtedness of the borrower;

(11) By agreements dated November 27, 1979 (Exhibit N) and September 23, 1980 (Exhibit D), the terms of the August 23, 1977, lease agreement were modified by granting the lessee (Antilles) both a reduction in the amount of its total rental payments and an extension of time in which certain payments were to be made. No prior notification of either of these modifications was provided to the plaintiff-guarantors;

(12) In May, 1981 the defendant S.B.D.A. made a formal demand

170

upon the individual guarantors for payment of the deficiency owed to it as current holder of the note.

(13) Defendant's demand and its assertion of rights under the terms of the various agreements have given rise to this action for declaratory relief and the counterclaim thereto.

## II.

The only issues presented for decision are legal in nature. No material questions of fact are now in dispute. Hence the matter is ripe for summary judgment. Reed, Wible and Brown, Inc. v. Mahogany Run Development Corp., 550 F.Supp. 1095, 1098 (D.V.I. 1982). See also, Cyntje v. Daily News Publishing Co., 551 F.Supp. 403, 404 n.1 (D.V.I. 1982) (summary judgment may be entered in favor of opposing party even if it has filed no cross-motion under Rule 56).

## A.

■■ Plaintiffs contend first that defendant, by having elected to take possession of secured property "in lieu of foreclosure" is thereby precluded from seeking a deficiency judgment against the individual guarantors. We disagree. Under the terms of §§ 9—504 and 9—505 of the Uniform Commercial Code a secured party who takes possession of collateral upon the default of the debtor may pursue one of two specific remedies; either "sell, lease or otherwise dispose of any or all of the collateral" after giving the debtor timely and sufficient notice, § 9—504,[1] or "retain the collateral in satisfaction of the obligation" after giving notice, § 9—505(2).[2] Where the creditor

---

[1] Section 9—504, 11A V.I.C., provides that the secured party after default may sell or otherwise dispose of any or all of the collateral, and the proceeds shall be applied to reasonable expenses of retaking the collateral and to satisfaction of the indebtedness secured; and further, that the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency.

[2] Section 9—505(2), 11A V.I.C., provides in pertinent part as follows:

In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. . . . In the absence of such written object [by the debtor or any other secured party] the secured party may retain the collateral in satisfaction of the debtor's obligation.

An alternative procedure set forth in section 9—506, "is that at any time before the secured party has disposed of the collateral . . . under section 9—504, or before the obligation has been discharged under section 9—505(2), the debtor . . . may redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses . . . incurred by the secured party in retaking . . . the collateral for disposition. . . ." Robiller v. Toth, 7 V.I. 155 at 164 (D.V.I. 1969) (Maris, J.).

elects to retake the collateral and "keep [it] as his own", he will be held to have discharged the obligation and "abandon[ed] any claim for a deficiency," Official Comment 1 to § 9—505, including any claim against indorsers or guarantors of the principal debt. See, e.g., Haufler v. Ardinger, 28 U.C.C. Rep. Sev. 893 (Mass. Ct. App. 1979).

■ Section 9—505(2) operates as such a preclusion only where the secured party manifests an intent to keep the collateral "in satisfaction of the obligation." See Nelson v. Armstrong, 582 P.2d 1100, 1108 (Idaho 1978); Priggen Steel Buildings Co. v. Parsons, 213 N.E.2d 252, 253 (Mass. 1966). An "election to retake security in full satisfaction of a debt may not be implied." Marine Midland Bank v. Connelly, 435 N.Y.S.2d 850, 850–51 (App. Div. 1981), citing S. M. Flickinger Co., Inc. v. 18 Genesee Corp., 423 N.Y.S.2d 73, 76 (App. Div. 1979).

In the present case, the parties agreed that while defendant would take possession of the equipment in which its security interest was attached, it would do so solely for the limited purpose of leasing the equipment back to Antilles Broadcasting. Indeed the initial lease agreement between defendant and Antilles (Exhibit M) was executed four days following the execution of the purchase agreement under which the collateral was to be "transferred" to defendant. The terms of the lease agreement were to take effect sixty days therefrom. It is obvious then that to the extent defendant took title to or possession of the collateral, it did so without an intent to "retain" it or "keep it" as its "own." Thus the challenged transaction should be characterized as a "disposition" of collateral within the meaning of § 9—504, rather than as a "retention" of collateral under § 9—505(2).

■■ This conclusion is not changed by the fact that defendant agreed in paragraph III(3) of the purchase agreement to take temporary possession of the collateral "in lieu of foreclosure." Although loosely speaking each of two Article 9 remedies available to defendant upon the borrower's default was a form of "foreclosure", the parties here unambiguously assented to a specific procedure for the "disposition" of the repossessed collateral, namely a transfer by way of a lease agreement with the purchaser of the borrower's business. As in S. M. Flickinger v. 18 Genesee Corp., supra, 423 N.Y.S.2d at 76, the borrower and guarantors here knowingly consented to the lease arrangement and therefore "may not now complain about [that] method of disposition." In light of the clear intent of the par-

172

ties, the phrase "in lieu of foreclosure" could not operate as a waiver[3] of the secured party's right to "dispose" of collateral under § 9—504.

B.

■ Having found that the transfer and lease of the equipment did not amount to a "retention" of collateral under the terms of § 9—505(2), it remains to be determined whether defendant properly "disposed" of the collateral in accordance with the notification requirements of § 9—504(3). If properly exercised, the remedy provided by § 9—504 does not preclude a subsequent deficiency judgment.

Plaintiffs contend that while they were timely notified about the terms of the initial lease agreement between defendant and Antilles, they were not given timely notice about either of the two subsequent modifications of the agreement. Thus, it is argued that the secured party did not provide ample notice about the terms of the "disposition" as required by § 9—504(3), and that the guarantors are thereby discharged from any obligation on the note.

■■ Under the terms of § 9—504, the secured party "must give reasonable advance notice [to the debtor] of a specific time after which . . . [the] intended disposition is to be made . . ." 4 Anderson, Uniform Commercial Code, § 9—504:10 at 616 (2nd ed. 1971). The majority rule is that secondary obligors, such as guarantors, are to be deemed "debtors" within the meaning of the subsection. Ford Motor Credit Co. v. Lototsky, 549 F.Supp. 996 (E.D. Pa. 1982); Rhoten v. United Virginia Bank, 269 S.E.2d 781, 784–85 (Va. 1980); Commercial Discount Corp. v. Bayer, 372 N.E.2d 926, 929 (Ill. Ct. App. 1978). The "disposition" after default may be by way of sale or lease so long as the "method, manner, time, place and terms" are "commercially reasonable." Section 9—504(3). In addition, § 9—501(3)(b) provides that the notice obligations of the secured party under § 9—504(3) may not be "nullified by prior agreement" and thus any such waiver contained in a guarantee agreement is unenforceable.[4] Ford Motor Credit Co. v. Lototsky, supra, 549 F.Supp. at 1005.

■■ The underlying purpose of these requirements is to "let

---

[3] Assuming arguendo that the parties did intend to effectuate a waiver, § 9—501(3)(b) of the code expressly provides that the parties may not waive or vary any of the rights and duties set forth in § 9—504(3) (notice of disposition of collateral must be given to debtor).

[4] It is for this reason that defendant may not properly rely on the waiver of notice provision contained in each of the guarantee agreements at issue here.

173

the debtor know that the property [is] to be [disposed of] . . . after a specific time and allowing the debtor to produce a buyer or make other arrangements to satisfy the secured party if possible." All-States Leasing Co. v. Ochs, 600 P.2d 899, 906 (Or. Ct. App. 1979). In general, a proper notification should give those with an obligation on the note "sufficient time to . . . protect their interests by *taking part in the . . . disposition* if they so desire." Official Comment 5 to § 9—504. (Emphasis added.)

In the present case, the secured party concedes, by way of stipulation, that it did not notify the guarantors of either of the two modifications of the August 23, 1977, lease agreement. Thus the question presented is whether that admitted failure amounted to a breach of any of the duties imposed by § 9—504(3) of the Uniform Commercial Code.

■■■ While no cases could be found which have addressed the precise question of whether the secured party must provide notice of any modification in the terms of the "disposition" of collateral, we believe that § 9—504(3) is designed primarily to ensure that the debtor is able to "take part" in the *initial* transfer of the collateral. The one case relied on by plaintiffs in this regard, DeLay First National Bank and Trust Co. v. Jacobson Appliance Co., 243 N.W.2d 745 (Nebr. 1976), is inapposite. There the court held that a secured party who disposes of collateral in several transactions must give notice of *each* partial disposition in order to comply fully with § 9—504(3). By contrast, in this case all of the secured property was transferred in one transaction of which the guarantors were, it is admitted, fully aware. Although the modifications did result in a modest reduction in the rental amounts originally agreed to[5] (and a corresponding

---

[5] The modification executed on November 27, 1979, altered the lessee's obligations in the following manner: for the months of June and July, 1979, the amount owed would be a simple 5% of gross receipts per month instead of 5% of gross receipt but not less than $2,000.00 per month as originally agreed. For the months of August and September 1979, the amount owed would be 5% of gross receipts—not less than $500.00 per month instead of the 5% of gross receipts—not less than $2,000.00 as originally agreed. For October, November and December, 1979 the amount owed would be 5% of gross receipts—not less than $500.00 per month instead of 5% of gross receipts—not less than $3,000.00 per month as originally agreed. From January 1980 to January 1981 the amount owed would be 5% of gross receipts—not less than $1,000.00 instead of 5%—not less than $3,000.00 as originally agreed. Thereafter, the amount would be 5%—not less than $2,000.00 instead of 5%—not less than $1,000.00

The modification executed on September 23, 1980, further extended the payment schedule and changed the payment "floor" for the period commencing January 1981 from $2,000.00 per month to $1,500.00 per month.

increase in the amount of the outstanding debt), there is no evidence that plaintiffs have been unduly prejudiced thereby. Neither of the two modifications effected a change in the timing, place or manner in which the collateral was to be leased to Antilles. Nor were plaintiffs denied the opportunity to see that reasonable value was received for the rental of the equipment. Because of the relatively unique nature of the collateral in question and the likelihood that without an extension of the payment schedule, the lessee would fail to meet *any* of its rent obligations, there is no suggestion that plaintiffs would have posed objections to the relatively minor modification in the terms of "disposition." Although there certainly could be circumstances in which a modification in the terms of the initial sale or lease of collateral would subject the secured party to the "reasonable notification" requirement of § 9—504(3), they are not presented here.

 With respect to commercial "reasonableness," there is no question that such a requirement does attach to the *entire* disposition of collateral, including any modifications thereto. See Fedders Corp. v. Taylor, 473 F.Supp. 961, 977 (D. Minn. 1979); DeLay First National Bank and Trust Co. v. Jacobson Appliance Co., supra, 243 N.W.2d 745. However, in the absence of any specific evidence that the secured party failed to obtain full market value for the transferred property or that the debtor was otherwise precluded from "taking part" in the disposition, there can be no finding of a breach of the duty of commercial "reasonableness."[6]

## C.

The final argument advanced by plaintiffs is that any claim by defendant on the note in question would be barred by the applicable statute of limitations as of May 23, 1981. The record reveals that an action to enforce an obligation on the note to People's Broadcasting Corporation would have accrued on May 23, 1975, the date on which the principal obligor made its "last payment" within the definition of 5 V.I.C. § 40. However, defendant first brought such an action—embodied in the counterclaim filed herein—on June 8, 1981, sixteen

---

[6] Having found that defendant fulfilled its obligations under § 9—504(3), we need not decide whether under Virgin Islands law the failure to comply with the notice provisions therein acts as an absolute bar to any subsequent deficiency judgment (the majority rule), or merely to shift the burden to the secured party to rebut a presumption that the value of the collateral at the time of disposition is equal to the value of the outstanding debt (the minority rule).

days after the lapse of the six-year period prescribed by 5 V.I.C. § 31(3)(A) for actions on a debt.

■ ■ Plaintiffs assert the limitations defense to a counterclaim admittedly brought by a government entity. The "general principle that claims of the sovereign are not subject to the defenses of laches and the statute of limitations, is applicable to the Territory [of the Virgin Islands], unless expressly waived . . . ." In re Hooper's Estate, 5 V.I. 518, 535, 359 F.2d 569, 578 (3rd Cir. 1966). It is urged that because the rights asserted here by defendant "derive" from a private entity (the Virgin Islands National Bank), and that at the time of accrual the chose in action belonged to that entity, the rule of governmental exemption from the statute of limitations should not apply. However, in light of the strong "public policy of protecting . . . citizens from damage to or loss of their public rights and property through the negligence of public officers," id., this argument does not present a counterveiling reason for removing defendant's claim from the general exemption. Derivative or not, the counterclaim interposed by defendant seeks to recover a substantial deficiency judgment on behalf of the taxpayers. In accordance with the principles set forth in Hooper's Estate, the counterclaim of defendant is not subject to the statute of limitations and therefore is not time barred.

### III.

For all the foregoing reasons the motion of plaintiffs for summary judgment will be denied and their complaint for declaratory relief dismissed. Judgment will be entered in favor of defendant solely on the issue of liability.

### ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED that the motion of plaintiffs for summary judgment be, and the same is, hereby DENIED and the complaint herein DISMISSED.