**In re ORE CARGO, INC., Bankrupt.**

**ISRAEL DISCOUNT BANK LIMITED, Plaintiff-Appellant,**

v.

**Jacob GOTTESMAN, Trustee in Bankruptcy of Ore Cargo, Inc., Defendant-Appellee.**

**No. 41, Docket 76–5012.**

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 1976.

Decided from Bench Oct. 8, 1976.

Decided Oct. 14, 1976.

J. Lester Parsons, III, New York City (Stephen P. Kyne, Burke & Parsons, New York City, on the brief), for appellant.

Michael Wexelbaum, New York City (Sherman & Citron, New York City, on the brief), for appellee.

Before KAUFMAN, Chief Judge, and MANSFIELD and MESKILL, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

The distinctive principles governing commercial transactions are not always reliable guides to the applicable standards for less orthodox credit agreements. Mindful of this distinction, we decline to extend the precepts of Article 9 of the Uniform Commercial Code to control the creation of security interests in tort claims. Specifically, we hold that a standard commercial security agreement, drafted with reference to the Code and accepted by the lender without knowledge of the existence of a tort claim arising from a nautical accident, did not convey a security interest in the chose in action. Although the judgment below was affirmed in open court, this novel legal issue merits further brief clarification.

A concise statement of the facts will place the legal question in perspective. In October, 1969, the S.S. *John Crosby,* a ship of Liberian registry owned by the bankrupt, Ore Cargo Inc., collided at sea with the S.S. *Haslach.* In July, 1973, more than three years later, $28,978.16 was paid to Ore Cargo's trustee in bankruptcy in settlement of its claim arising from that mishap.[1] In the intervening period, on January 15, 1971, Ore Cargo procured a $300,000 refinancing loan from Israel Discount Bank Ltd. Among the documents securing the indebtedness was a "general security agreement" drafted and filed in conformance with Article 9 of the Uniform Commercial Code.[2]

---

1. $8,010.00 of this amount has been expended by the trustee. Israel Discount seeks to reclaim the remaining $20,968.16, the only assets of Ore Cargo still in the possession of the trustee.

2. Although initially Israel Discount relied on other documents as well as the security agreement to support its argument, the Bank has now conceded it cannot "look elsewhere" than the general security agreement.

Israel Discount now contends the instrument also conveyed a security interest in Ore Cargo's collision claim, despite the Bank's concession that it did not have the slightest knowledge of the collision or the tort claim on behalf of Ore Cargo when the contract was executed. Israel Discount urges that the agreement defines as "Security" *inter alia,* "credits, claims, demands and any other property, rights and interests" although the instrument only gives Israel Discount the rights in the "Security" "of a secured party under the Uniform Commercial Code".

 Section 9–104(k) of the New York Uniform Commercial Code explicitly excludes tort claims from the ambit of Article 9. Thus, an agreement transferring the rights of a secured creditor under the Code cannot be construed to bestow a security interest in tort claims. While the contract also granted the bank certain rights not conferred by the U.C.C., notably a right of set-off, this factor is of little aid to the Bank. Applying the maxim, *expressio unius est exclusio alterius,* the failure of Israel Discount, a sophisticated commercial lender, to include a similar specific reference to tort claims precludes our divining or implying such a right on the basis of the general language of the agreement.

 The Bank contends also, that the Uniform Commercial Code has "shattered" the preexisting New York law of assignment, and urges us to extend, by analogy, the principles of Article 9 to Ore Cargo's collision claim. But the drafters of the Code specifically exempted tort claims as "beyond the pale with respect to a statute devoted to commercial financing", with the intention that "the pre-Code common law of assignment or pledge will continue to apply".[3] In light of this specific exclusion, and in the absence of any contrary indication from the legislature or courts of New York State, a security interest in Ore Car-

go's collision claim was not transferred by the general security agreement.

 Israel Discount has conceded, and Bankruptcy Judge Herzog found, that the instrument was insufficient to constitute an assignment under pre-U.C.C. New York law. And, there was clearly no intention "to vest in the assignee a present right in the things assigned", *Coastal Commercial Corp. v. Samuel Kosoff & Sons,* 10 A.D.2d 372, 376, 199 N.Y.S.2d 852 (Fourth Dept. 1960), since the bank agrees that it did not have knowledge of the existence of the collision claim when the security agreement was signed.[4] Israel Discount's other contentions were adequately considered and decided in Bankruptcy Judge Herzog's opinion below. Accordingly, the judgment is affirmed.

---

**3.** Gilmore, *Security Interests in Personal Property,* Vol. 1, p. 316 (1965).

**4.** We need not decide whether a security interest in tort claims can ever be obtained under

New York law. It is sufficient to hold that the general language of the security agreement at issue here did not transfer such a right.