**BARCLAYS BUSINESS CREDIT, INC., Plaintiff**
**v.**
**FOUR WINDS PLAZA PARTNERSHIP and QUINCY CORPORATION, Defendants**

Civ. No. 96-136M

District Court of the Virgin Islands

Div. of St. Thomas and St. John

September 19, 1996

JOSEPH BRUCE WM. ARELLANO, ESQ., St. Thomas, U.S.V.I., W. MICHAEL BOND, ESQ., JAMES W. ROBERTSON, ESQ., (WEIL, GOTSHAL & MANGES LLP), Washington, D.C., *for Plaintiff Barclays Business Credit, Inc.*

JOHN K. DEMA, ESQ., (LAW OFFICES OF JOHN K. DEMA, P.C.), Christiansted, St. Croix, U.S.V.I., *for Defendant Four Winds Plaza Partnership*

Tom Bolt, Esq., (Tom Bolt & Associates, P.C.), St. Thomas, U.S.V.I., *for Defendant Quincy Corporation*

BROTMAN, *Judge*

This is an action for recovery on a debt. On July 2, 1996, upon motion of plaintiff Barclays Business Credit, Inc. ("Barclays"), the Court issued a Temporary Restraining Order ("TRO") which enjoined defendants' use of settlement proceeds that defendant Four Winds Plaza Partnership ("Four Winds") reportedly received in another litigation (the "Settlement Proceeds"). Before the Court presently is Barclays' motion for a preliminary injunction continuing restraints with regard to the Settlement Proceeds. For the reasons stated below, the Court denies Barclays' motion.

## I. FACTUAL BACKGROUND

In 1993, Barclays extended a loan to Four Winds in the principal amount of $6,484,961.20 (the "1993 Loan"). Comp. ¶ 12. The 1993 Loan is reflected in a loan agreement and an installment note (the "1993 Note"). *See id.*; Exs. E and F to Barclays' Mot. for a TRO. (Exhibits from the TRO motion are hereinafter cited without reference to that motion.) The 1993 loan was for a term of one year, maturing on July 20, 1994. Comp. ¶ 13. As security for the 1993 Loan, Four Winds executed a first priority mortgage (Ex. G); a general security agreement in favor of Barclays which invokes Article 9 of the Virgin Islands Commercial Code (the "1993 Security Agreement"); a subordination agreement (Ex. I); and a conditional assignment of leases, rents and general revenues (the "1993 Assignment of Rents"; Ex. J). Barclays filed a Form UCC-1 Financing Statement. *See* Comp. ¶ 18; Quincy Mem. in Opp'n to Mot. for Prelim. Inj. ("Quincy Opp'n") at 3.

The parties disagree about the contents of the 1993 Security Agreement. Barclays contends that the 1993 Security Agreement provides it with a security interest in "general intangibles" of Four Winds. Barclays' Reply to Defs.' Opp'ns to Mot. for Prelim. Inj. at 3-4. In support of this argument, Barclays has produced a copy of the 1993 Security Agreement in which a box is checked listing general intangibles as included in the secured collateral. *Id.* at 4. Barclays states that this copy of the agreement is from the files of

the law firm of Dudley, Topper & Feuerzeig. *Id.* At the time it filed its Complaint and Memorandum in Support of its Motion for a TRO, Barclays had provided the Court with a different copy of the agreement in which the box in question was not checked. Ex. H. Defendants have cited this copy with the unchecked box in arguing that the 1993 Security Agreement did not include general intangibles in the secured collateral. Opp'n of Four Winds to Pl's Mot. for Prelim. Inj. at 3; Quincy Opp'n at 3.

The parties also disagree about whether, if Barclays is secured in Four Winds' general intangibles, does this mean that Barclays is also secured in the Settlement Proceeds. The parties agree that Four Winds received monies in settlement of an environmental tort action which Four Winds brought against Esso Standard Oil, S.A., Texaco and other parties alleging that such parties were responsible for contamination of Four Winds' real estate and underlying groundwater which Four Winds had obtained a permit to commercially exploit. Comp. ¶ 20. Defendants argue that § 9-104(k) of the Virgin Islands Commercial Code (the "Virgin Islands Code"), which follows the Uniform Commercial Code (the "UCC"), excludes proceeds of settlement of a tort claim from the scope of Article 9 of the Code.[1] Barclays argues that § 9-104(k) should be read to rule out an Article 9 security interest in unliquidated tort causes of action but not proceeds of tort claims. Barclays claims that Four Winds defaulted on the 1993 Loan in July 1994 by failing to repay amounts due on the 1993 Note at maturity. As a result, Barclays contends, Four Winds is presently indebted to Barclays in an amount in excess of $6,779,504.97. Comp. ¶ 22.

Barclays filed the instant action on June 25, 1996, for injunctive relief with regard to the Settlement Proceeds,[2] enforcement of

---

[1] Section 9-104, entitled "Transactions excluded from article," provides: "This article does not apply. . . (k) to a transfer in whole or in part of any of the following: any claim arising out of tort. . ." V.I. CODE ANN. tit. 11A, § 9-104 (1967).

[2] In Count I of its Complaint, Barclays claims a security interest in the Settlement Proceeds and requests that the Court "enter a TRO and preliminary and permanent injunctions: a) enjoining Four Winds from disposing of the Settlement Proceeds; b) ordering that the Settlement Proceeds be segregated into an interest-bearing, federally insured bank account; c) directing Four Winds to make an immediate and periodic accounting thereof to the Court and Barclays pending resolution of this proceeding on the merits, and d) ordering that the Settlement Proceeds be disgorged and paid over to Barclays, the

Barclays' security interest,[3] enforcement of an assignment of rents,[4] and a money judgment against Four Winds and Quincy Corporation ("Quincy"), jointly and severally.[5] Barclays has alleged in its Complaint that Quincy is the sole general partner of Four Winds, and both defendants have stated that "Quincy Corporation is the general partner of Four Winds." Comp. ¶¶ 4, 26, and 47; Four Winds Answer at 2; Quincy Answer at 1.

Barclays moved for a TRO concerning the Settlement Proceeds. The Court heard argument on the motion on June 27, 1996. On July 2, 1996, the Court issued a TRO: a) enjoining Four Winds, Quincy, and their partners, agents, servants, employees, attorneys, representatives and any persons acting in concert or participation with them who received actual notice of the order from using any of the Settlement Proceeds; and b) ordering Four Winds to "segregate all

---

amount so paid to be credited against the money judgment" sought by Barclays. Comp. ¶ 39.

[3] In Count II of the Complaint, Barclays incorporates by reference its Settlement Proceeds claim, and:

Barclays respectfully requests that the Court enter an order enforcing Barclays' security interest in the Personal Collateral by reducing Barclays' claims to the money judgment sought in Count IV hereof and foreclosing Barclays' lien against the Personal Collateral, ordering a judicial sale of the Personal Collateral not already in the form of cash or cash equivalents, providing that any net proceeds of such sale shall be turned over to Barclays to be applied against the money judgment sought in Count IV hereof, and ordering Four Winds to forthwith pay or transfer to Barclays any of the personal collateral as is in the form of cash or cash equivalents, including without limitation the Settlement Proceeds, any such amount turned over to be applied against the money judgment sought in Count IV hereof.

Comp. ¶¶ 40-41.

[4] In Count III Barclays incorporates its Settlement Proceeds and Personal Collateral claims of Counts I and II, and requests that the Court enter a declaratory judgment and preliminary and permanent injunctive relief declaring that all rents and other sums payable on account of occupancy of certain real estate referenced in the 1993 Assignment of Rents. Comp. ¶¶ 42-44.

[5] In Count IV, Barclays incorporates its Settlement Proceeds, Personal Collateral, and Assignment of Rents counts and:

. . . respectfully requests that the Court enter a money judgment against Four Winds and Quincy jointly and severally, in favor of Barclays in an amount equal to the unpaid principal balance, accrued but unpaid interest and late charges due under the terms of the 1993 Loan Documents, plus all court expenses, disbursements, and reasonable attorneys['] fees that Barclays incurs in connection with this action, plus post-judgment interest, the total sum to be proven, but not less than $6,779,504.97."

Comp. ¶¶ 45-47.

204

such Settlement Proceeds in Four Winds' possession or control, or that comes into Four Winds' possession or control, into an interest bearing account with a federally insured financial institution within the jurisdiction of the Court and provide to the Court and Barclays the location and amount of Settlement Proceeds so held."

The Court, with consent of the parties, ordered that the terms of the TRO would remain in full force and effect until a hearing on Barclays' motion for a preliminary injunction. The Court heard the motion on August 15, 1996, and, upon further stipulation of the parties, ordered that the terms of the TRO would remain in full force and effect until it ruled on Barclays' preliminary injunction motion.

## II. DISCUSSION

### A. Standard for Preliminary Injunction

An injunction is an "extraordinary remedy which should be granted only in limited circumstances." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994) (citing *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)), *cert. denied*, 115 S. Ct. 1838 (1995). "This proposition is particularly apt in motions for preliminary injunctions, when the motion comes before the facts are developed to a full extent through the normal course of discovery." *Id.* at 1427.

█ Pursuant to the Third Circuit's test for preliminary injunctions, this Court is to issue such an injunction only if the plaintiff "produces evidence sufficient to convince the district court" that *each* of four factors favor preliminary relief:

> 1) the likelihood that the plaintiff will prevail on the merits at the final hearing; 2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; 3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and 4) the public interest.

*New Jersey Hosp. Assoc. v. Waldman*, 73 F.3d 509 (3d Cir. 1995) (quoting *American Tel. and Tel. Co.*, 42 F.3d at 1427). Thus, a failure by Barclays to make the requisite showing regarding any one of these four factors must result in this Court denying its motion for

a preliminary injunction. *See In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure by the moving party to satisfy these prerequisites: that is, a failure to show likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction.")

## B. Likelihood of Success on the Merits at Final Hearing

To satisfy the first prong of the preliminary injunction test in the Third Circuit, a movant must demonstrate a "reasonable probability of eventual success in the litigation." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). "It is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a *prima facie* case showing a reasonable probability that it will prevail on the merits." *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1975).

Barclays' argument that it is likely to succeed on the merits of its money judgment claim is essentially uncontested. Indeed, as Barclays has noted, defendants admit the existence of the 1993 loan and Four Winds' inability to pay the loan back. *See* Comp. ¶¶ 20, 36; Four Winds Answer at 2; Quincy Answer at 1; Barclays' Reply at 2. Having reviewed Barclays' evidence that Four Winds is in default on the 1993 loan, the Court is convinced that Barclays is indeed likely to obtain a money judgment of at least $6.7 million. *See* Comp. ¶ 47.

Additionally, Barclays has convinced the Court that it is likely that it will obtain a favorable judgment on its assignment-of-rents claim. The 1993 Assignment of Rents strongly supports Barclays' claim. Ex. J; Comp. ¶ 43. Indeed, defendants do not deny that Barclays is entitled to the assignment of rents it seeks. Four Winds Answer at 2; Quincy Answer at 2.

Barclays has not convinced the Court, however, that it is likely to prevail on the merits of its claim to a security interest in the Settlement Proceeds. Assuming *arguendo* that Barclays is secured in Four Winds' general intangibles, the Court is not persuaded of Barclays' likelihood of success with its argument that § 9-104(k) of the Virgin Islands Code does not exclude tort settlement proceeds from the scope of Article 9.

■ There is persuasive authority for the proposition that a Virgin Islands court should follow a majority rule of interpretation of a UCC provision when there is a majority rule. *Abramson v. Small Business Development Agency*, 20 V.I. 167 (D.V.I., 1983); *Perez v. Bank of Nova Scotia*, 12 V.I. 279 (D.V.I. 274); V.I. Code Ann. tit. 1, § 4 (1967). There is no clear majority rule, however, with regard to the issue of whether Article 9 applies to tort proceeds. *See In re Ore Cargo, Inc.*, 544 F.2d 80 (2d Cir. 1976) (holding that an Article 9 security agreement could not bestow a security interest in tort settlement proceeds); *In re Monroe County*, 29 B.R. 686 (Bankr. S.D.Fla. 1983) (same); *Interdevco, Inc., v. Hollywood Federal Savings and Loan Assoc.*, 523 So.2d 773 (Fla. Dist. Ct. App. 1988) (same); *contra In re Phoenix Marine Corp* , 20 B.R. 424 (Bankr. E.D.Va. 1982) (holding that § 9-104(k) does not exclude tort settlement proceeds from the scope of Article 9); *Sicherman v. Falkenberg*, 136 B.R. 481 (Bankr. N.D. Ohio 1992) (same). Indeed, Barclays counsel acknowledged at the hearing on the present motion that "it's an unsettled and unusual issue." Tr. of Oral Arg. on Mot. for Prelim. Inj. at 25.

"In the absence of a clear trend in either direction, the district court of the Virgin Islands may apply the 'better rule.' *See Edwards v. Born*, 792 F.2d 387, 390 (3d Cir. 1986). First the Court will explore the view that tort settlement proceeds are not excluded from the scope of Article 9. In both *Phoenix Marine* and *Sicherman*, the respective Bankruptcy Courts drew a distinction between a tort claim and proceeds from a settlement of that tort claim. The courts suggested that whereas § 9-104(k) excludes transfers of tort *claims*, it does not exclude tort settlement proceeds.

An Article 9 Study Committee of the Permanent Editorial Board of the UCC (the "PEB") concluded in a December 1992 report that this was the correct interpretation of Article 9. "In the Committee's view," the report stated, "existing Article 9 does not exclude a right to payment that derives from a tort claim, such as the right to payment under a settlement agreement or under a promissory note that evidences liability in tort." *PEB Study Group, Uniform Commercial Code Article 9: Report*, 1992 A.L.I. and Nat. Conf. of Commissioners on Uniform State Laws at 59. The Committee recommended, "Article 9 or the official comments should be revised to make that result clear." *Id.*

The philosophy underlying this view appears to be that "a right to payment that derives from a tort claim" is contractual in nature, and not the basis for a tort claim. Professor Harold R. Weinberg, who served as special advisor to the PEB Article 9 Committee on the issue of Article 9 treatment of tort claims and derivative rights, laid out the argument this way twenty years ago:

> In the typical sequence of events, settlement occurs at some point after suit is filed but prior to judgment. In the settlement a tort victim obtains a contractual right to payment from the tortfeasor, or his insurer, which constitutes a new form of intangible personal property derived from the original tort claim. When the tortfeasor or his insurer issues a check to satisfy this obligation another form of derivative property has come into existence — the victim-payee's rights on the check. Still another intangible derivative right is produced when the check is cashed or deposited — the rights in the fund. While the security assignment of the original tort claim is not within the scope of Article Nine, derivative settlement rights are excluded only if they are 'claim[s] arising out of tort.' Therefore, these rights could constitute original collateral within Article Nine.

Harold R. Weinberg, *Tort Claims as Intangible Property: An Exploration from an Assignee's Perspective*, 64 Ky. L. J. 49, 83 (1975-76); Harold R. Weinberg, *Secured Party's Right to Sue Third Persons for Damage to or Defects in Collateral*, 81 Com. L. J. 445, 448 (Nov. 1976);

This is quite a labored interpretation of § 9-104(k). The Court is not convinced that this view on Article 9 treatment of tort settlement proceeds is likely to prevail at final hearing. As Professor Weinberg stated after setting forth the above argument, the language of the subsection would have limited effect if it excluded only tort claims but not derivative or insurance rights. "If the scope provisions of Article Nine, with their accompanying official comments, are construed to include certain rights derived from a tort cause of action, the Code's exclusion of 'any claim arising out of tort' would become meaningless due to the ease with which it could be circumvented by assignment of these rights." *Tort Claims as Intangible Property* at 87. *See also* Weinberg, Harold R., *Tort Claims*

*and Related Rights as Article Nine Collateral: Preliminary Outline and Bibliography, in PEB Study Group, Uniform Commercial Code Article 9: Appendices to Report,* 1992 A.L.I. and Nat. Conf. of Commissioners on Uniform State Laws at 549-550; William D. Hawkland, Richard A. Lord and Charles C. Lewis, *Uniform Commercial Code Series,* Sec. 9-104:12 (1996) ("Although an assignment of the right to receive the proceeds of a settlement contract should theoretically constitute a secured transaction, a strong argument can be made that subsection 9-104(k) excludes this assignment as well, since it too would be a transfer of a claim that arose out of a tort.")

Further, as Professor Weinberg also noted, an interpretation including tort settlement proceeds in Article 9 seems to cut against the apparent intent of the drafters of § 9-104(k). *See Tort Claims as Intangible Property,* 87-89. The Official Comment to § 9-104(k) states that tort claims "do not customarily serve as commercial collateral." V.I. CODE ANN. tit 11A, § 9-104, Uniform Laws Comments (1967); . Professor Grant Gilmore, one of the primary drafters of Article 9, wrote in a treatise that tort claims were specifically excluded from Article 9 as "beyond the pale with respect to a statute devoted to commercial financing." 1 Grant Gilmore, *Security Interests in Personal Property* § 10.7 (1965); *see also Tort Claims as Intangible Property* at 87 (noting that Professor Gilmore was "intimately involved in the development of the Article"). In *Ore Cargo,* Chief Judge Kaufman of the Second Circuit cited this comment from Professor Gilmore in finding tort settlement proceeds excluded from Article 9. *Ore Cargo,* 544 F.2d at 82.

Many take issue with the broad scope of § 9-104(k). The PEB Article 9 Committee, for example, stated in its 1992 report that "the Committee sees little reason to continue the general exclusion of tort claims that otherwise are assignable under non-UCC law." *PEB Report* at 59. The Committee noted that "in many jurisdictions tort claims are assignable if they arise out of injury to property or breach of contract, but are not assignable if they result from injury to the person or reputation." *PEB Report* at 58. Similarly, Professor James White and Robert Summers state in a leading treatise that they "see no good reason" for the exclusion of otherwise assignable commercial tort claims from Article 9. 4 James J. White and Robert S. Summers, *Uniform Commercial Code* (4th ed. 1995). In

April of this year, the Council to the Members of the American Law Institute released a discussion draft of a revised Article 9 which limited the exclusion to personal injury tort claims. *Uniform Commercial Code Revised Article 9: Discussion Draft (April 16, 1996)*, 1996 A.L.I. and Nat. Conf. of Commissioners on Uniform State Laws at § 9-104(11). To date, however, § 9-104(k) excludes from Article 9 *"any* claim arising out of tort." V.I. Code Ann. tit. 11A, § 9-104(k) (1967) (emphasis added).

■ In failing to persuade the Court of its likelihood of success on its Settlement Proceeds claim, Barclays has failed to convince the Court that the "likelihood of success" factor of the four-part injunction test favors the preliminary injunction Barclays seeks. Barclays' Settlement Proceeds claim is central to this litigation; indeed, each of the counts of Barclays' Complaint incorporates its Settlement Proceeds claim. Counts I and II of the Complaint specifically request that the Court order Four Winds to pay the Settlement Proceeds to Barclays. Comp. ¶¶ 37-41. Moreover, it is clear that a final determination regarding whether Barclays holds a security interest in the settlement proceeds is likely to "materially alter the expected value" of any judgment for Barclays in this case. *See Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 201 n.22 (3d Cir. 1990).

Accordingly, the Court finds that the "likelihood of success" prong does not favor issuance of a preliminary injunction.

## C. Irreparable Harm

A movant's burden with regard to establishing irreparable harm is quite heavy. "More than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury. . .'" *Acierno v. New Castle County,* 40 F.3d 645, 655 (3d Cir. 1994) (citations omitted) (quoting *Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 358 (3d Cir. 1980)).

■ Against the background of this exacting standard, "[t]here is ample authority for the proposition 'that the unsatisfiability of a

money judgment can constitute irreparable injury' for the purposes of granting a preliminary injunction." *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205-206 (3d Cir. 1990)). A finding of irreparable harm is warranted where the Court concludes that a money judgment "probably would go unsatisfied" absent issuance of the injunctive relief sought. *Id.*

Whereas Barclays has made a strong case that "Four Winds' assets are dramatically insufficient to repay Four Winds' obligations to Barclays," Comp. ¶ 36 and Defs.' Answers, it has not made this case with regard to the assets of Quincy, whom it seeks to hold liable jointly and severally with Four Winds on its money judgment count. *See* Comp. ¶¶ 45-47.

As stated above, the parties agree that Quincy is the general partner of Four Winds. Accordingly, Barclays is correct that "Quincy, as the sole general partner of Four Winds, is jointly and severally liable with Four Winds for Four Winds' obligations to Barclays," if liability is found. Comp. ¶ 47; see also Comp. ¶ 26. The parties agree that Four Winds is a U.S. Virgin Islands limited partnership. Under the limited partnership statute of the U.S. Virgin Islands, "A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners." V.I. Code Ann. tit. 26, § 209. The "liabilities of a partner in a partnership" includes liability for all "debts and obligations" of the partnership. V.I. Code Ann. tit. 26, § 47.

Accordingly, a money judgment related to Four Winds' default on the 1993 loan would likely be — as Barclays has requested — entered against both Four Winds and Quincy jointly and severally. This means that Quincy's assets are relevant to the issue of whether a money judgment in this case would probably go unsatisfied. *See Gerardi*, 16 F.3d at 1373 n.18.

Barclays has failed to establish that Quincy's assets are insufficient to pay a money judgment. Indeed, Barclays has not offered any allegation or evidence with regard to Quincy's assets. Accordingly, Barclays has not proved that a money judgment "probably would go unsatisfied," *Gerardi*, 16 F.3d at 1373, and this factor favors denial of Barclays' motion for a preliminary injunction.

211

## III. CONCLUSION

■ Barclays' failure to make the requisite showing regarding the "likelihood of success" and "irreparable harm" factors of the Third Circuit inquiry must result in this Court denying its motion for a preliminary injunction. *See In re Arthur Treacher's Franchisee Litigation*, 689 F.2d at 1143. Accordingly, the Court will not reach the final two factors of the test. *See Lindsay v. City of Philadelphia*, 844 F. Supp. 224, 229 (E.D.Pa. 1994).

This Court will issue an Order denying Barclays' motion for a preliminary injunction directed at the Settlement Proceeds.

THIS MATTER having come before the Court on the motion of the plaintiff, Barclays Business Credit, Inc., for a preliminary injunction;

The Court having entered a Temporary Restraining Order in this matter on July 2, 1996;

The Court having conducted, on August 15, 1996, a hearing on the plaintiff's motion for a preliminary injunction;

The Court having reviewed the briefs submitted by the parties, heard the witnesses, received evidence and heard the argument of counsel;

For the reasons set forth in the Court's opinion of this date;

IT IS on this 19th day of September, 1996 hereby

ORDERED that the plaintiff's motion for a preliminary injunction is DENIED. No costs.