**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

v.

**DELLA INDUSTRIES, INC., Della Construction Co., Inc. and Stephen J. Dellaquila, Defendants.**

**No. Civ. 3:95CV1960(PCD).**

United States District Court,
D. Connecticut.

March 9, 1998.

James J. Mercier, Pepe & Hazard, Hartford, CT, for Plaintiff Insurance Co. of North America.

John J. O'Brien, Jr., Moller, DiPentima, Peck & O'Brien, Hartford, CT, for Defendants, Della Industries, Inc., Della Construction Co., Inc.

Edward F. Spinella, Robert U. Sattin, Reid & Riege, P.C., Hartford, CT, for Defendant, Stephen J. Dellaquila.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff moves for summary judgment on all counts of the complaint and both counts of the counterclaim. Defendants move for summary judgment on all counts of the complaint and the first count of the counterclaim. For the reasons below, defendants' motion is granted with respect to the complaint and the first count of the counterclaim. Plaintiff's motion is granted with respect to the second count of the counterclaim.

## I. BACKGROUND

Defendants are contractors, for whom plaintiff issued performance and payment bonds in connection with public construction projects ("Bond"). The Bond bound plaintiff to complete unfinished work and resolve payment claims on defendants' behalf in the event of their failure to do so.

Defendants failed to complete certain construction projects. Plaintiff incurred substantial costs in fulfilling the Bond. Pursuant to the Bond, and subsequent indemnity and security agreements ("Agreements"), defendants were to partially indemnify plaintiff. Plaintiff retained security in certain collateral, which included $450,000 held in escrow, as well as all "General Intangibles" as defined

in Article Nine of the Uniform Commercial Code.

The Agreements provided that plaintiff would retain its interest in the collateral if its total losses from fulfilling the Bond exceeded $10,000,000. If losses were less than that amount, then plaintiff was to release the secured assets in exchange for a promissory note for the outstanding indemnification debt. However, in the event of defendants' breach of the Agreements, plaintiff would not have to release the secured assets (even if the total losses came to less than $10,000,000), and defendants would not be able to satisfy their duty of indemnification under the Agreements' more lenient terms.

The present dispute arises from defendants' sale to a third party of an intangible asset and the proceeds therefrom. The asset was a claim in Connecticut Superior Court by defendants against the Lane Construction Company (the "Claim"), as a result of Lane's contract bidding practices. The Claim alleged tortious interference with a business expectancy and that the same underlying conduct violated the Connecticut Unfair Trade Practices Act ("CUTPA").

Since defendants' were insolvent, they asked plaintiff to finance prosecution of the Claim for their mutual benefit. Plaintiff refused. Defendants then sold the claim to Chatam, Inc., a corporation owned by defendant Dellaquila's wife. Under the terms of the assignment, Chatam assumed responsibility for the costs of the litigation. As consideration, defendants retained a twenty percent interest in any proceeds from the Claim.

Chatam's prosecution of the Claim was ultimately successful, ending with a settlement of over one-half million dollars. When plaintiff learned of the settlement, it wanted all of the proceeds (including the 80% paid to Chatam) on the basis that defendants had no right to transfer the Claim in the first place, despite its prior refusal to assume the Claim.

Plaintiff alleges breach of contract, fraudulent conveyance and a constructive trust. Defendant Dellaquila's counterclaim alleges breach of contract and violation of CUTPA. Plaintiff has a parallel claim against Chatam in the Southern District of Florida ("Chatam litigation").

## II. ANALYSIS

### A. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is "material" if it "might affect the outcome of the suit under governing law ..." *Id.* A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are drawn against the moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2nd Cir.1987). No material facts are disputed here. The motions are adjudicated based on questions of law alone.

### B. Breach Of Contract

Plaintiff alleges that defendants' conveyance of the Claim and failure to turn over the proceeds therefrom constitute breach of the Agreements. First, plaintiff argues that the Claim was a secured asset, which defendants had no right to transfer. Second, plaintiff contends that even if it had no security interest in the Claim itself, it was entitled to the proceeds of the settlement.

#### 1. Plaintiff's Interest In The Claim

Under the Agreements, defendants could not transfer secured assets without plaintiff's permission. Collins Aff., Exh. 4, Security Agreement at ¶ 10. Secured assets include:

All "General Intangibles" *as that term is defined in the Uniform Commercial Code* whether presently owned or hereafter acquired, and including, without limitation, all choses in action, causes of action, and all other intangible personal property of the Debtor, including without limitation, corporate or other business records, inventions, designs, patents, patent applications, trademarks, servicemarks, tradenames,

trade secrets, goodwill, copyrights, registrations, licenses, franchises, customer lists, tax refund claims, credit files, computer programs, printouts and other computer materials and records, guaranty claims, security interests or other property held by or granted to Debtor to secure payment of any obligation of any obligor of Debtor and any and all of the rights of Debtor of whatever nature under any and all contracts, agreements, or leases (whether of real or personal property) to which the Debtor is or may become a party, including without limitation all of the rights of Debtor to enforce all of the provisions of and to obtain payments or other performance due under all contracts, agreements or leases.

Collins Aff., Exh. 4 at 10 (emphasis added). The UCC definition of General Intangibles includes "things in action," but specifically excludes "transfer[s] in whole or in part of any claim arising out of tort." C.G.S. §§ 42a–9–104(k) and 106.

 The threshold issue is whether the Claim "arises" out of tort.[1] If it does, then it was not a General Intangible under the Agreements, and defendants did not breach by transferring the Claim to Chatam. It is undisputed that the Claim's tortious interference with a business expectancy count is an excluded tort.[2] At issue is whether the CUTPA count "aris[es] out of tort." There is no Connecticut authority directly on point.

In determining that there is no right to a jury trial under CUTPA, the Connecticut Supreme Court has held that CUTPA is not grounded in common law, as are most torts. *Associated Invs. Co., Ltd. Partnership v. Williams Assocs. IV*, 230 Conn. 148, 153–162, 645 A.2d 505 (1994). CUTPA "has its roots not in the common law, but rather in § 5(a)(1) of the FTCA [Federal Trade Commission Act]." *Id.* at 159, 645 A.2d 505. "Because CUTPA creates an essentially equitable cause of action not substantially similar to common law claims triable to a jury prior to 1818, we conclude that a jury trial is not constitutionally required for actions brought under CUTPA." *Id.* at 155, 645 A.2d 505.

This conclusion however does not establish that CUTPA is not a tort. First of all, the legal context of *Associated Invs.* was entirely different—the issue was whether there is a right to a jury trial for CUTPA claims under the Connecticut Constitution, which turns on CUTPA's origins in law or equity. The definition of "tort," however, does not depend so neatly on whether a cause of action comes from common law, equity, or statute. Although tort remedies are frequently non-equitable money damages, equitable remedies are sometimes available for torts (e.g., anti-nuisance injunctions). Although most torts have their origins in common law, some are statutory (e.g., product liability). Furthermore, the *Associated Invs.* holding was legislatively overruled and there now is a statutory right to trial by jury for CUTPA claims. C.G.S. § 42–110g(g). *Associated Invs.* is therefore not controlling.

---

1. Plaintiff's judicial estoppel argument is without merit. Plaintiff argues that since defendants refused to answer questions regarding the nature of the Claim at deposition, the doctrine of judicial or equitable estoppel prevents them from asserting now that it arose under tort. Known under various names, judicial estoppel prevents a party from changing its factual position over the course of judicial proceedings to the detriment of its opponent. 1B Moore's Federal Practice ¶ 0.405[8]. The doctrine "is intended to protect against a litigant playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990) (quoting *Religious Technology Center v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989) (dissenting opinion) (citations omitted)).

It is uncontested that defendants declined to discuss the nature of the Claim at deposition solely because of a Superior Court gag order. The estoppel doctrine is therefore inapplicable.

First of all, defendants did not assert a different position at the deposition. Rather, they asserted no position. Second, compliance with a court order is nothing like "playing fast and loose with the courts." Accordingly, the defendants are not estopped from asserting that the Claim arose under tort.

2. Some commentators urge that the § 9–104(k) exclusion be amended to cover only personal torts, such that business tort claims would be included in the definition of General Intangibles. *See, e.g.,* Harold R. Weinberg, *Tort Claims As Collateral: Impact On Consumer Finance*, 49 Consumer Fin.L.Q.Rep. 155 (1995). However, the UCC presently makes no distinction between personal and commercial torts, all of which are excluded.

Plaintiff cites *Sportsmen's Boating Corp. v. Hensley*, 192 Conn. 747, 474 A.2d 780 (1984), to establish that CUTPA actions are non-tortious. In *Sportsmen's Boating*, the Connecticut Supreme Court found that the trial court had committed harmless error by analyzing a CUTPA and a tortious interference claim together. The Court noted that the two are "distinct, cognizable causes of action." *Id* at 753, 474 A.2d 780. Only the tortious interference claim is referred to as a "tort." *Id* at 753–57. *Sportsmen's Boating*, however, reveals that the distinction was semantic, for the mechanical purpose of emphasizing the presently undisputed proposition that tortious interference and CUTPA claims are different causes of action. Nothing in the spirit or letter of *Sportsmen's Boating* suggests that CUTPA actions are not tort claims.

UCC policy weighs in favor of treating CUTPA claims as exempt from Article Nine definition of General Intangibles. The UCC's official comment states that tort claims are excluded from Article Nine because they "do not customarily serve as commercial collateral." C.G.S. § 42a–9–104(k) *Official Comment* ¶ 8. CUTPA claims also do not customarily serve as business collateral. Plaintiff would permit formalism to defeat UCC express policy.

Plaintiff argues that CUTPA should not be considered a tort just because the claim arose from tortious conduct. Reasoning by analogy, plaintiff points out that conduct often gives rise to causes of action under both tort and breach of contract, but that the contract claim would not be considered a "tort" for purposes of the Article Nine definition of General Intangibles. The analogy is imperfect however. First, unlike CUTPA, it is clear that breach of contract is not a tort. Second, the policy of § 42a–9–104(k) is to exempt claims which—unlike breach of contract actions—do not customarily serve as business collateral.

The language of the UCC exclusion furthermore suggests that the exclusion extends beyond torts themselves. The exclusion applies not only to torts, but to "any claim *arising* out of tort." C.G.S. § 42a–9–104(k) (emphasis added). One must assume that

statutory language has a purpose. "The UCC is to be 'liberally construed and applied to promote its underlying purposes and policies.'" *Bardon Tool & Mfg. Co. v. Torrington Co.*, 1996 WL 677254 (Conn.Super.) (quoting C.G.S. § 42a–1–102(1) and citing *Fidelity & Cas. Co. v. Constitution Nat'l Bank*, 167 Conn. 478, 485, 356 A.2d 117 (1975); *Hall v. Dichello Distribs., Inc.*, 6 Conn.App. 530, 539, 506 A.2d 1054 (1986)). "[A]rising out of tort" must be construed to cast a broader penumbra than torts alone. Thus even if the CUTPA claim were not tortious, it would nonetheless "arise" under tort for purposes of the UCC definition of General Intangibles.

Plaintiff's supplemental memorandum makes a puzzling argument that CUTPA is premised on "unfairness" and therefore does not "sound in tort." Pl.Suppl.Mem. at 6–10. This argument is illogical and is premised on two erroneous assumptions: (1) that causes of action based on unfairness are necessarily equitable; and (2) that equitably derived causes of action cannot be torts for purposes of the Article Nine definition of General Intangibles.

Plaintiff admits that it is sometimes ambiguous whether certain causes of action are torts for purposes of the 9–104(k) exclusion. *Id* at 7 (quoting 2 Thomas M. Quinn, Quinn's Uniform Commercial Code Commentary And Law Digest, ¶ 9–106[A][3] (2d ed.1991)). But plaintiff argues that since not every CUTPA claim could be considered an excluded tort, therefore none should. This argument fails for two reasons. First, it is unclear that some CUTPA claims are not torts for the purposes at hand. Second, even if some CUTPA claims do not "aris[e] out of tort," that does not mean that this one does not.

Determination that CUTPA is a tort is consistent with proceedings in the related cases. Prior to settlement of the Claim, the Superior Court referred to both causes of action as "torts" (note the plural). *Della Construction, Inc. v. The Lane Construction Co.*, 42 Conn.Supp. 202, 205, 612 A.2d 147 (Conn.Super.1991).

In addition, the Florida District Court in the parallel Chatam litigation found that the CUTPA claim is a tort for purposes of

§ 42a–9–104(k). *Ins. Co. Of North America v. Chatam*, No. 95–8379, slip op. at 6–10 (S.D.Fl. May 13, 1997). The Florida Court noted that CUTPA falls within a preeminent scholar's definition of tort, which "consists of the breach of duties fixed and imposed upon the parties by the law itself, without regard to their consent to assume them, or their efforts to evade them." *Id* at 9 (quoting William Prosser, *Law Of Torts* § 1, at 4 (3d ed.1964)).

Consonant with the Florida Court's reference to Prosser's definition, it is noted that CUTPA also fits Black's Law Dictionary definition of "tort:"

A private or civil wrong or injury. A wrong independent of contract. A violation of a duty imposed by general law or otherwise upon all persons occupying the relation to each other which is involved in a given transaction. There must always be a violation of some duty owing to plaintiff, and generally such duty must arise by operation of law and not by mere agreement of the parties.

Black's Law Dictionary 4th ed. at 1660 (citations omitted). A CUTPA treatise also considers CUTPA to be a statutory expansion of tort law:

The Connecticut Unfair Trade Practices Act has brought expanded remedies and broad an indefinite substantive standards to the law of business torts. Historically, the law of business torts generally has been confined in the common law to nominate torts such as interference with business expectancies, fraud, or similarly narrow and specific statutory torts. Enactment of CUTPA was directed at a perceived failure of the law governing commercial transactions, in some circumstances, either to provide relief or to provide adequate relief where conduct was actionable.

Langer *et al., The Connecticut Unfair Trade Practices Act* at 7 (1994).

For the foregoing reasons, the Claim's CUTPA count is a tort for purposes of the Article Nine definition of General Intangibles. Plaintiff therefore had no interest in the Claim, and the transfer to Chatam did not breach the Agreements.

### 2. *Plaintiff's Right To Proceeds Of The Claim*

Plaintiff argues that even if the Claim was not secured collateral, it is nonetheless entitled to the proceeds. There is no controlling Connecticut state court authority, although a Bankruptcy Court has held that proceeds form tort claims are not "General Intangibles" under the Connecticut UCC definition. *In the Matter of Babco, Inc.*, 133 B.R. 286, 289–90 (Bankr.D.Conn.1991).

One commentator notes that in § 42a–9–104, two of the thirteen exceptions to the General Intangibles definition specifically state that proceeds are *not* exempted. C.G.S. § 42a–9–104(g) (in the context of insurance policy claims); § 42a–9–104(*l*) (deposit accounts). No such provision for proceeds exists in the § 42a–9–104(k) tort exemption. "[I]t is apparent that when the drafters of Article 9 wanted to permit a section 9–306 security interest in proceeds from a transfer otherwise excluded by section 9–104, they expressly stated the exception within the exclusion." Amanda K. Esquibel, *An Article 9 Primer Regarding Uninsured Collateral Destroyed By A Tortfeasor*, 46 U.Kan.L.Rev. 211, 214–15 (1998). Absent a specific reference to proceeds in § 42a–9–104(k), "[b]asic principles of statutory construction lead to the conclusion that section 9–104(k)'s exclusion applies not only to tort claims, but also to the proceeds of such a claim." *Id.*

The "better rule" has been found to favor exempting tort settlement proceeds from the definition of General Intangibles, just as tort claims themselves. *Barclay's Bus. Credit v. Four Winds Plaza Part.*, 938 F.Supp. 304, 308–10 (D.Virgin Islands 1996). The principle argument in favor of permitting security interests in proceeds of tort claim settlements is that the settlement agreement itself is a contract. *Id. Barclays* found this to be "quite a labored interpretation of § 9–104(k)." *Id.* at 309. "Further ... an interpretation including tort settlement proceeds in article 9 seems to cut against the apparent intent of the drafters of § 9–104(k)." *Id.* (citing Harold R. Weingberg, *Tort Claims as*

*Intangible Property: An Exploration From An Assignee's Perspective*, 64 Ky.L.J. 49, 87–89 (1975–76)). The *Barclays* analysis and conclusion is persuasive.

Turning to § 42a–9–104(k)'s policy, it is apparent that proceeds of tort claims should be exempted. Like tort claims, proceeds therefrom "do not customarily serve as commercial collateral." *See* C.G.S. § 42a–9–104(k) *Official Comment* ¶ 8. The result urged by plaintiff is formalistic and contrary to the exclusion's stated purpose.

Plaintiff contends that even if not entitled to the proceeds as secured collateral under the Article Nine definition, it is nonetheless entitled to the proceeds under its contractual right of indemnification and the assignment clause. Applying New York's UCC, which is not materially different, the Second Circuit rejected this argument:

> Section 9–104(k) of the New York Uniform Commercial Code explicitly excludes tort claims from the ambit of Article 9 ... While the contract also granted the bank certain rights not conferred by the U.C.C., notably a right of set-off, this factor is of little aid to the Bank. Applying the maxim, *expressio unius est exclusio alterius*, the failure of [the Bank], a sophisticated commercial lender, to include a similar specific reference to tort claims precludes our divining or implying such a right on the basis of the general language of the agreement.

*In Re Ore Cargo, Inc.*, 544 F.2d 80, 82 (2nd Cir.1976). Mindful of the exhortation to construe the UCC liberally, this reasoning is persuasive.

Plaintiff's argument that it is entitled to the proceeds of the Claim based on its equitable right of subrogation fails for same reasons. The UCC's specific exemption of torts (and the consequent exemption of proceeds) trumps a general right of subrogation.

Accordingly, the Claim "aris[es] out of tort" and is excluded from plaintiff's security interest in General Intangibles as defined by the Agreements and the UCC. Plaintiff is not

entitled to the proceeds of the Claim. Defendants did not breach, and summary judgment is therefore granted for defendants on Count I.[3] Plaintiff's claims for fraudulent conveyance and constructive trust are premised on there having been a breach. Since there is no breach as a matter of law, summary judgment is granted for defendants on Counts II and III.

### C. Counter–Claims

Plaintiff and defendant Dellaquila move for summary judgment with respect to the Count I of the Counterclaim ("First Counterclaim"). Under the Agreements, plaintiff was to release the collateral if: (1) it determined that the total loss under the Bond Agreement was less than $10,000,000; and (2) defendants complied with the Agreements. In the First Counterclaim, defendant Dellaquila seeks declaratory relief establishing that both conditions have been satisfied and that plaintiff is in breach of the Agreement for failure to release the collateral.

It is undisputed that the first requirement is met, since the total loss was less than $10,000,000. Plaintiff's opposition to the First Counterclaim is based on its contention that defendants breached the Agreements by transferring the Claim. As discussed above, defendants did not breach the Agreements. Plaintiff offers no alternative basis for opposing summary judgment on the First Counterclaim. Summary judgment is accordingly granted for defendant Dellaquila with respect to the First Counterclaim.

■ Count II of the Counterclaim ("Second Counterclaim") alleges that plaintiff violated CUTPA by failing to release the secured collateral. "The good faith litigation of a disputed and complex issue does not constitute oppression under CUTPA." *United States v. Casle Corp.*, 895 F.Supp. 420, 431 (D.Conn.1995). Defendant does not respond to plaintiff's motion for summary judgment with respect to the Second Counterclaim. After review and absent opposition, plaintiff's motion for summary judgment with respect

**3.** Since summary judgment is granted based on the threshold issue, defendants' waiver and es-
toppel arguments are not considered.

to the Second Counterclaim is granted. *See* Local Rule 9(a)(1).

## III. CONCLUSION

The Request to Refile Motion for Summary Judgment (doe 44) is **granted.** The Request to Renew Motion for Summary Judgment (doe 45) is **granted.** Plaintiff's motion for summary judgment (doe 17) is **granted in part, denied in part.** Defendants' motion for summary judgment (doe 25) is **granted in part, denied in part.** Judgment shall enter for defendants on all Counts in the Complaint as well as Count I of the Counterclaim. Judgment shall enter for plaintiff on Count II of the Counterclaim. The Clerk shall close the file.

SO ORDERED.