301 F.3d 1150
 In re PACIFIC/WEST COMMUNICATIONS GROUP, INC., a California corporation, Debtor,
Fifteenth RMA Partners, L.P., a New York limited partnership, Appellant-Cross-Appellee,
v.
Pacific/West Communications Group, Inc., a California corporation, Chapter 11 Debtor and Debtor in Possession, Appellee-Cross-Appellant.
 No. 01-56047.
 No. 01-56051.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 5, 2002.
 Filed August 29, 2002.
 
 Templeton Briggs, Brewer & Brewer, Costa Mesa, CA, for the appellant-cross-appellee.
 Gary E. Klausner, Stutman, Treister & Glatt, Los Angeles, CA, for the appellee-cross-appellant.
 Appeal from the United States District Court for the Central District of California; A. Howard Matz, District Judge, Presiding. D.C. Nos. CV-00-09288-AHM, CV-00-09739-AHM.
 Before T.G. NELSON, PAEZ and TALLMAN, Circuit Judges.
 OPINION
 TALLMAN, Circuit Judge:
 
 
 1
 We must decide whether under the California Commercial Code (CCC or the Code) as it existed prior to July 1, 2001, a creditor with a security interest in another's personal property, including general intangibles, and all proceeds thereof, can attach its interest to the proceeds of a commercial tort claim, despite the Code's prohibition against "[a] transfer in whole or in part of any claim arising out of tort." Cal. Com.Code § 9104(k) (1997). The bankruptcy court held that it could, and the district court affirmed the ruling. Because we hold that the California legislature intended to change the law, effective July 1, 2001, by significantly altering the statute so that from that date forward a party could attach its security interest to tort proceeds, we hold that the law prior to the change prohibited such an attachment. We therefore reverse.
 
 
 2
 * Pacific/West Communications Group, Inc. (PacWest), a public relations firm, became involved in a dispute with one of its major clients, the California Department of Transportation (CalTrans), that eventually resulted in a 1997 lawsuit in the California court system. PacWest's complaint contended that CalTrans breached contracts with PacWest and engaged in tortious activity, including defamation, which PacWest claimed destroyed its business. Approximately one year later, PacWest filed a petition for Chapter 11 bankruptcy relief. Not long thereafter, Fifteenth RMA Partners, L.P. (RMA), which had acquired PacWest's loan portfolio from the FDIC following the collapse of Guardian Bank,[1] filed a proof of claim for $927,163.84 as a secured creditor against PacWest.[2]
 
 
 3
 While in Chapter 11 reorganization, PacWest continued to pursue its claims against CalTrans by using special counsel working on a contingency fee basis. The parties to the California suit eventually agreed to submit their dispute to binding arbitration, and the arbitrator determined that CalTrans had breached one contract, resulting in $218,478 in damages. The arbitrator also awarded PacWest $1,935,000 in damages as a result of CalTrans's defamation of PacWest; this amount represented the value of PacWest as a "going concern."[3]
 
 
 4
 RMA sought to attach its security interest to the arbitration award. Over PacWest's objection that Commercial Code § 9104(k) prohibited an attachment to the proceeds of a tort claim, the bankruptcy court held that RMA could attach its security interest to the proceeds, but also that RMA was subject to a surcharge under § 506(c) of the Bankruptcy Code. The court, therefore, first awarded PacWest's arbitration attorneys $1,040,296.51 for their successful work on a contingency fee basis. It then allowed the estate to pay $32,471 to PacWest's bankruptcy counsel and $115,000 to PacWest's CEO, Stephen Tobia, for their efforts in the CalTrans litigation. Finally, the bankruptcy court imposed a surcharge of $522,605 upon RMA so that RMA only recovered $490,118 of its $1,012,723 claim.
 
 
 5
 The district court affirmed the bankruptcy court's rulings. Both parties appealed. PacWest contends that § 9104 prohibits RMA from attaching its security interest to the proceeds of a successful tort claim, while RMA challenges the imposition of a surcharge. We have jurisdiction under 28 U.S.C. § 158(d).
 
 II
 
 6
 We review de novo district court rulings on appeal from a bankruptcy court. See Durkin v. Benedor Corp. (In re G.I. Indus., Inc.), 204 F.3d 1276, 1279 (9th Cir.2000). We review factual findings of the bankruptcy court for clear error and conclusions of law de novo. See Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1283 (9th Cir.1996).
 
 
 7
 We must examine two former sections of the CCC to determine whether RMA could attach its security interest to the proceeds of PacWest's successful tort action.[4] Section 9306 defined "Proceeds" or a "Secured Party's Rights on Disposition of Collateral" to include "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." Cal. Com.Code § 9306 (1997). But § 9104 provided that "[a] transfer in whole or in part of any claim arising out of tort" could not be granted as collateral to a secured party. Cal. Com.Code § 9104 (1997).
 
 
 8
 We begin our analysis by recognizing what is undisputed: (1) neither the former § 9104 nor the current version of the law permits an individual to grant as collateral a pending tort claim; and (2) effective July 1, 2001, California law now allows a security interest to be attached to the proceeds of a tort claim. See Cal. Com.Code § 9109 (2002) (A party cannot grant as collateral "[a]n assignment of a claim arising in tort, other than a commercial tort claim, but Sections 9315 and 9322 apply with respect to proceeds and priorities in proceeds.").
 
 
 9
 The question we must answer here, however, is whether California law prior to July 1, 2001, permitted the proceeds of a tort action to be subject to attachment by a secured creditor per § 9306 or barred such attachment per § 9104. Several courts have found that § 9104 precluded attachment to the proceeds of tort actions as well as to any pending tort claims.[5] See, e.g., Israel Disc. Bank, Ltd. v. Gottesman (In re Ore Cargo, Inc.), 544 F.2d 80, 81-82 (2d Cir.1976) (refusing to allow a creditor to attach its security interest to the settlement proceeds of a debtor's claim against a party that damaged its ship in a collision at sea); Corcoran v. Land O'Lakes, Inc., 39 F.Supp.2d 1139, 1148 (N.D.Iowa 1999) ("[N]ot only does the security interest not apply to the tort claim, it does not apply to the proceeds of a tort claim.") (emphasis in original); Ins. Co. of N. Am. v. Della Indus., Inc., 998 F.Supp. 159, 164 (D.Conn.1998) ("The `better rule' has been found to favor exempting tort settlement proceeds from the definition of General Intangibles, just as tort claims themselves."), rev'd on other grounds, 229 F.3d 1135 (2d Cir.1999); Barclays Bus. Credit, Inc. v. Four Winds Plaza P'ship, 938 F.Supp. 304, 308-09 (D.Vi.1996) (rejecting the interpretation of § 9104 that drew a distinction between the assignment of proceeds of tort claims and the assignment of tort claims themselves).
 
 
 10
 Conversely, the court in Nolin Prod. Credit Ass'n v. Stone (In re Stone), 52 B.R. 305 (Bankr.W.D.Ky.1985), focused on § 9306 and held that the legislative intent was to give "proceeds" the "broadest possible definition," thereby permitting attachment to a tort award. Id. at 307. Stone concerned the loss of 300 cattle and the debtor's tort action for negligence against a veterinarian, an animal clinic, and a laboratory. See id. at 306. The court did not discuss § 9104 but simply held that "monies received in settlement of a tort claim for the tortious damage or destruction of secured collateral are proceeds ...." Id. at 308.
 
 
 11
 We cited Stone approvingly in McGonigle v. Combs, 968 F.2d 810, 828 (9th Cir.1992), but in that case we did not squarely address the issue presented here. We did not there consider the interplay of § 9104 and § 9306. Nor did we have the benefit of the subsequent changes made by the California legislature to its Commercial Code to help us interpret the provisions at issue here. McGonigle concerned, in part, a dispute pertaining to the priority of liens on the debtor's portion of a litigation settlement fund. A bank that had lent the debtor money to buy stock had perfected an interest in the stock that the debtor bought. After the debtor failed to repay the loan, the bank brought suit against him. The debtor, meanwhile, had joined a consolidated securities action brought after the stock price tumbled, alleging SEC, common law, and state law violations. The debtor had entered into a fee agreement for legal representation in that action. See McGonigle, 968 F.2d at 814-15, 827.
 
 
 12
 When the debtor agreed to settle, the question arose whether the bank was entitled to recover the settlement funds as "proceeds" of the collateral in which it had perfected an interest. We held that the bank had a security interest in the settlement funds that gave it a priority lien over the lien held by the debtor's attorneys. See id. at 828. We examined § 9306, rejected the attorneys' argument that there had been no "sale ... or other disposition of collateral," and stated that "[i]f the purpose of the statute is to be served ... the security-holder must be protected against diminutions in the value of the security that arise not only from sale, but also from other events or transactions that damage the security." Id. We concluded that § 9306 was intended to be read broadly and, citing Stone, compared the situation to a recovery in tort: "The classic situation is that of a tort recovery obtained by a debtor for damage to secured property; the secured creditor obtains a lien on such a payment to replace the diminished value of the security." Id. We neither mentioned nor considered § 9104 in reaching our decision in McGonigle, nor considered the extent to which the settlement fund was derived, if at all, from a claim arising out of tort. Thus, we simply did not examine § 9104, as we must here.
 
 
 13
 McGonigle correctly read § 9306 broadly. At the time, the statute read: "`[p]roceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." Cal. Com.Code § 9306 (1997) (emphasis added). But that is only part of the analysis where, as here, the matter concerns proceeds stemming from a tort claim. First, we note that the sentences immediately following the definition of "proceeds" specifically identify "[i]nsurance payable by reason of loss or damage to the collateral" and "payments or distributions made with respect to investment property" as proceeds. Id. The California legislature did not indicate that payments from a tort claim were proceeds. Next, we must consider the former § 9104, where the California legislature excluded "[a] transfer in whole or in part of any claim arising out of tort" from the type of collateral that could be granted as security. Thus, the broad reading of § 9306 stemming from the legislature's choice of the word "whatever" is limited by the specific exclusions of § 9104.[6]
 
 
 14
 The better construction of § 9104 is that it prohibits RMA from attaching its security interest to tort proceeds. To the extent we might have any lingering doubts concerning the proper application of §§ 9104 and 9306 to tort proceeds given McGonigle's dictum in reliance upon Stone, they were resolved by the California legislature. For some time, commentators had complained that the tort claims exclusion was too broad.[7] The California legislature responded by changing the law. Effective July 1, 2001, the tort exclusion now applies to "[a]n assignment of a claim arising in tort, other than a commercial tort claim, but Sections 9315 and 9322 apply with respect to proceeds and priorities in proceeds." Cal. Com.Code § 9109 (2002).
 
 
 15
 The district court noted that the bankruptcy court faced a "forthcoming change in UCC law governing security interests in tort claims" and held that the court did not err in holding that RMA could attach its security interest to PacWest's tort proceeds, presumably because that was the direction in which the law was headed. But under California law, the court should have reached the opposite conclusion. See Gill v. Villagomez, 140 F.3d 833, 836 (9th Cir.1998) ("As a principle of statutory construction, we assume from statutory amendments a purpose to change existing law."); Nahrstedt v. Lakeside Vill. Condo. Ass'n, 878 P.2d 1275, 1286 (Cal.1994) ("Under settled principles of statutory construction, such a material alteration of a statute's phrasing signals the Legislature's intent to give an enactment a new meaning.").[8]
 
 
 16
 Furthermore, in this case, the California legislature has specifically told us that the current non-exclusion of tort proceeds represents a change in the law. The 1999 Assembly Committee Comment states:
 
 
 17
 Tort Claims. Subdivision (d)(12) narrows somewhat the broad exclusion of transfers of tort claims under former Section 9104(k). This division now applies to assignments of `commercial tort claims' (defined in Section 9102) as well as to security interests in tort claims that constitute proceeds of other collateral (e.g., a right to payment for negligent destruction of the debtor's inventory). Note that once a claim arising in tort has been settled and reduced to a contractual obligation to pay (as in, but not limited to, a structured settlement) the right to payment becomes intangible and ceases to be a claim arising in tort.
 
 
 18
 Cal. Com.Code § 9109 cmt. 15 (1999) (emphasis added).
 
 
 19
 Thus, while the tide of history favors RMA's position, we cannot. It is clear that a party like RMA can now attach its security interest to tort proceeds. Commentators who opposed the broad exclusion of § 9104(k) have been vindicated. But we examine the law as it was when the creditor sought to attach its security interest, rather than what it is now, or what it should have been.[9]
 
 
 20
 Because we hold that RMA could not attach its security interest to the proceeds of PacWest's tort claim at the relevant time, we reverse the district court's ruling affirming the bankruptcy court. As such, we need not address whether § 552(a) of the Bankruptcy Code applies in this instance[10] or whether the imposition of a surcharge under § 506(c) was appropriate.
 
 
 21
 REVERSED.
 
 
 
 Notes:
 
 
 [1]
 RMA held a security interest in "[a]ny and all personal property ... now owned or later acquired ..." by PacWest, including "general intangibles (including but not limited to tax refunds and goodwill) ... replacements ... relating to any collateral," and all "proceeds" of the secured property
 
 
 [2]
 With interest, the bankruptcy court determined RMA's claim to be worth $1,012,723
 
 
 [3]
 CalTrans eventually paid an adjusted sum of $2,301,521.53
 
 
 [4]
 Although PacWest does not dispute RMA's ability to recover damages resulting from CalTrans's breach of contract, the majority of PacWest's recovery was for damages in tort resulting from CalTrans's defamation of PacWest
 
 
 [5]
 Various states, including California, have based their commercial codes on the Uniform Commercial Code. For ease of comparison, we refer to all identically worded provisions by using California's former numerical system: §§ 9104 and 9306
 
 
 [6]
 "[I]t is apparent that when the drafters of Article 9 wanted to permit a section 9-306 security interest in proceeds from a transfer otherwise excluded by section 9-104, they expressly stated the exception within the exclusion." Amanda K. Esquibel,An Article 9 Primer Regarding Uninsured Collateral Destroyed by a Tortfeasor, 46 U. Kan. L.Rev. 211, 215 (1998). "[B]ecause no provision in section 9-306 references proceeds from tort claims and section 9-104(k) excludes tort claims without any express exception for proceeds, monies paid on tort claims cannot be `proceeds' under section 9-306." Id. at 216. Therefore, "the omission of any exception from the section 9-104(k) exclusion means the drafters intended no exception for proceeds of tort claims. In other words, section 9-104(k) excludes the proceeds of the tort claim as well as the tort claim itself." Id. at 215.
 
 
 [7]
 See, e.g., 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE, at 59 (4th ed.1995). In a case like this where a party had a security interest in assets that were destroyed by tortious activity, the debtor receives a windfall if the proceeds of the tort claim cannot attach because the asset (in its new form) is then free of its security interest. See Esquibel, 46 U. Kan. L.Rev. at 217.
 
 
 [8]
 This binding principle trumps the view of the Permanent Editorial Board for the Uniform Commercial Code, which, in 1992, recommended that "Article 9 or the official comments ... be revised to make clear that Article 9 applies to security interests in rights to payment that derive from claims arising out of tort...." PEB Study Group Uniform Commercial Code Article 9, at 58 (1992). The Committee believed that Article 9 only needed to beclarified because in its view "existing Article 9 [did] not exclude a right to payment that derives from a tort claim, such as the right to payment under a settlement agreement or under a promissory note that evidences liability in tort." Id. at 59.
 
 
 [9]
 The change does not apply retroactivelySee Cal. Com.Code § 9702 (2002).
 
 
 [10]
 We need not decide whether we could hear this issue that PacWest raised for the first time on appeal